Opinion
KENNARD, J.
A supermarket owner sought a court injunction to prevent a labor union from picketing on the privately owned walkway in front of the only customer entrance to its store. In response, the union argued that two statutory provisions—Code of Civil Procedure section 527.3 (the Moscone Act) and Labor Code section 1138.1 (section 1138.1)—prohibited issuance of an injunction under these circumstances. The trial court denied relief, ruling that the supermarket owner had failed to satisfy section 1138.l’s requirements for obtaining an injunction against labor picketing.
The Court of Appeal reversed. It held that the walkway fronting the supermarket’s entrance was not a public forum under the California Constitution’s provision protecting liberty of speech (Cal. Const., art. I, § 2, subd. (a)), and therefore the store owner could regulate speech in that area. It further held that both the Moscone Act and section 1138.1, because they give speech regarding a labor dispute greater protection than speech on other subjects, violate the free speech guarantee of the federal Constitution’s First Amendment and the equal protection guarantee of the federal Constitution’s Fourteenth Amendment. This court granted the union’s petition for review.
We agree with the Court of Appeal that the supermarket’s privately owned entrance area is not a public forum under the California Constitution’s liberty of speech provision. For this reason, a union’s picketing activities in such a location do not have state constitutional protection. Those picketing activities do have statutory protection, however, under the Moscone Act and section 1138.1. We do not agree with the Court of Appeal that the Moscone Act and section 1138.1, which are components of a state statutory system for regulating labor relations, and which are modeled on federal law, run afoul of the federal constitutional prohibition on content discrimination in speech regulations. On this basis, we reverse the Court of Appeal’s judgment and remand the matter for further proceedings.
*1089 I. Facts
Plaintiff Ralphs Grocery Company (Ralphs) owns and operates warehouse grocery stores under the name Foods Co. One such store is located in a retail development in Sacramento called College Square, which also contains restaurants and other stores. The College Square Foods Co store has only one entrance for customers. A paved walkway around 15 feet wide extends outward from the building’s south side, where the customer entrance is located, to a driving lane that separates the walkway from the store’s parking lot, which also serves customers of other retail establishments within College Square.
When the College Square Foods Co store opened in July 2007, agents of defendant United Food and Commercial Workers Union Local 8 (the Union) began picketing the store, encouraging people not to shop there because the store’s employees were not represented by a union and did not have a collective bargaining agreement. The Union’s agents, in numbers varying between four and eight, walked back and forth on the entrance walkway carrying picket signs, speaking to customers, and handing out flyers. These activities generally occurred five days a week (Wednesday through Sunday) for eight hours a day. The Union’s agents did not impede customer access to the store.
In January 2008, Ralphs notified the Union in writing of its regulations for speech at its Foods Co stores, including the one in College Square. Those store regulations prohibit speech activities within 20 feet of the store’s entrance and prohibit all such activities during specified hours and for a week before certain designated holidays. The store regulations also prohibit physical contact with any person, the distribution of literature, and the display of any sign larger than two feet by three feet. The Union’s agents did not adhere to Ralphs’s speech regulations. In particular, they handed out flyers and stood within five feet of the store’s entrance. Ralphs asked the Sacramento Police Department to remove the Union’s agents from the College Square Foods Co store, but the police declined to do so without a court order.
In April 2008, Ralphs filed a complaint in Sacramento County Superior Court alleging that the Union’s agents, by using the walkway fronting the College Square Foods Co store as a forum for expressive activity without complying with Ralphs’s speech regulations, were trespassing on its property. Among other forms of relief, Ralphs sought a temporary restraining order, a preliminary injunction, and a permanent injunction barring the Union’s agents from using the College Square Foods Co store property to express their views without complying with Ralphs’s regulations prohibiting certain speech activities on its property.
*1090 Although the trial court denied Ralphs’s request for a temporary restraining order, it issued an order to show cause and set an evidentiary hearing on the application for a preliminary injunction. In response, the Union argued that the Moscone Act, as construed by this court in Sears, Roebuck & Co. v. San Diego County Dist. Council of Carpenters (1979) 25 Cal.3d 317 [158 Cal.Rptr. 370, 599 P.2d 676] (Sears), barred the court from enjoining peaceful picketing on a privately owned walkway in front of a retail store entrance during a labor dispute, and that Ralphs was not able to satisfy section 1138.1’s procedural requirements for injunctions against union picketing.
On May 28, 2008, the trial court ruled that the Moscone Act violates the federal Constitution’s First and Fourteenth Amendments because it favors labor speech over speech on other subjects. In reaching that conclusion, the trial court found persuasive the reasoning of the federal Court of Appeals for the District of Columbia Circuit in Waremart Foods v. N.L.R.B. (D.C. Cir. 2004) 359 U.S. App.D.C. 312 [354 F.3d 870] (Waremart/N.L.R.B.). Regarding section 1138.1, the trial court said it would have found that statute to be unconstitutional as well had it not considered itself bound by a California Court of Appeal’s decision, Waremart Foods v. United Food & Commercial Workers Union (2001) 87 Cal.App.4th 145 [104 Cal.Rptr.2d 359] (Waremart/United Food), which held that section 1138.1 does not violate the federal or state constitutional equal protection guarantees. (Waremart/United Food was decided by the Third District Court of Appeal, which also decided this case.) The trial court ordered that an evidentiary hearing be held under section 1138.1 to determine whether Ralphs was entitled to the requested injunctive relief.
After conducting the evidentiary hearing, the trial court denied Ralphs’s motion for a preliminary injunction. The court found that Ralphs had “failed to introduce evidence sufficient to carry its burden on any of the factors enumerated in section 1138.1.” In particular, the court found that “[t]he evidence did not establish that the Union had committed any unlawful act, or that it had threatened to do so,” or “that anything the [Union picketers were] doing would cause any ‘substantial and irreparable injury’ to the store property, or that public officers were unable or unwilling to furnish adequate protection to plaintiff’s property.” The court also found that Ralphs had “failed to carry its burden of proof that its rules are reasonable time, place and manner restrictions within the guidelines of Fashion Valley Mall, LLC v. NLRB (2007) 42 Cal.4th 850 [69 Cal.Rptr.3d 288, 172 P.3d 742].” Ralphs appealed.
The Court of Appeal reversed and remanded the matter to the trial court with instructions to grant the preliminary injunction. The Court of Appeal stated that “the entrance area and apron” of the Foods Co store “were not *1091 designed and presented to the public as public meeting places,” and therefore did not constitute a public forum under the state Constitution’s liberty of speech provision. Because these areas did not constitute a public forum, the court concluded, Ralphs “could limit the speech allowed and could exclude anyone desiring to engage in prohibited speech.” The Court of Appeal also concluded that both the Moscone Act and section 1138.1, because they give speech about labor disputes greater protection than speech on other issues, violate the federal Constitution’s First and Fourteenth Amendments. The Court of Appeal acknowledged that, as to section 1138.1, it had reached a contrary result in Waremart/United Food, supra, 87 Cal.App.4th 145, but it said it had there “applied the rational relationship test because the plaintiff made no argument and presented no authority to apply the strict scrutiny test.”
This court granted the Union’s petition for review.
II. Discussion
A. Public Forum Under the State Constitution
The California Constitution states: “Every person may freely speak, write and publish his or her sentiments on all subjects, being responsible for the abuse of this right. A law may not restrain or abridge liberty of speech or press.” (Cal. Const., art. I, § 2, subd. (a).) It also guarantees the rights to “petition government for redress of grievances” and to “assemble freely to consult for the common good.” (Id., art. I, § 3, subd. (a).) Through these provisions, this court has held, our state Constitution protects speech in privately owned shopping centers. (Robins v. Pruneyard Shopping Center (1979) 23 Cal.3d 899, 910 [153 Cal.Rptr. 854, 592 P.2d 341] (Pruneyard)) A privately owned shopping center may constitute a public forum under the state Constitution because of “the growing importance of the shopping center” (Pruneyard, at p. 907) “ ‘as a place for large groups of citizens to congregate’ ” and “ ‘to take advantage of the numerous amenities offered’ ” there, and also because of “ ‘ “the public character of the shopping center,” ’ ” which is a result of the shopping center’s owner having “ ‘ “fully opened his property to the public” ’ ” (id. at p. 910 & fn. 5).
This court in Pruneyard stressed that “those who wish to disseminate ideas” in shopping centers do not “have free rein.” (Pruneyard, supra, 23 Cal.3d at p. 910.) Pruneyard approvingly quoted the following remarks made by Justice Mosk in an earlier case: “ ‘It bears repeated emphasis that we do not have under consideration the property or privacy rights of an individual homeowner or the proprietor of a modest retail establishment. As a result of advertising and the lure of a congenial environment, 25,000 persons are *1092 induced to congregate daily to take advantage of the numerous amenities offered by the [shopping center there]. A handful of additional orderly persons soliciting signatures and distributing handbills in connection therewith, under reasonable regulations adopted by defendant [shopping center] to assure that these activities do not interfere with normal business operations [citation] would not markedly dilute defendant’s property rights.’ ” (Pruneyard, at pp. 910-911, quoting Diamond v. Bland (1974) 11 Cal.3d 331, 345 [113 Cal.Rptr. 468, 521 P.2d 460] (dis. opn. of Mosk, J.).)
Our reasoning in Pruneyard determines the scope of that decision’s application. That reasoning is most apt in regard to shopping centers’ common areas, which generally have seating and other amenities producing a congenial environment that encourages passing shoppers to stop and linger and to leisurely congregate for purposes of relaxation and conversation. By contrast, areas immediately adjacent to the entrances of individual stores typically lack seating and are not designed to promote relaxation and socializing. Instead, those areas serve utilitarian purposes of facilitating customers’ entrance to and exit from the stores and also, from the stores’ perspective, advertising the goods and services available within. Soliciting signatures on initiative petitions, distributing handbills, and similar expressive activities pose a significantly greater risk of interfering with normal business operations when those activities are conducted in close proximity to the entrances and exits of individual stores rather than in the less heavily trafficked and more congenial common areas. Therefore, within a shopping center or mall, the areas outside individual stores’ customer entrances and exits, at least as typically configured and furnished, are not public forums under this court’s decision in Pruneyard, supra, 23 Cal.3d 899.
Our conclusion is consistent with decisions by California’s intermediate appellate courts. We consider here, as examples, the decisions in Albertson’s, Inc. v. Young (2003) 107 Cal.App.4th 106 [131 Cal.Rptr.2d 721] (Albertson’s) and in Van v. Target Corp. (2007) 155 Cal.App.4th 1375 [66 Cal.Rptr.3d 497] (Van).
Albertson’s concerned a supermarket in a Nevada County shopping center called Fowler Center, between Grass Valley and Nevada City. (Albertson’s, supra, 107 Cal.App.4th 106, 110.) The supermarket’s owner sued six individuals who, for the purpose of gathering signatures on voter initiative petitions, had stationed themselves on the walkway immediately outside the supermarket’s entrances. The supermarket owner sought injunctive and declaratory relief to stop this expressive activity. The trial court granted an injunction barring the defendants from coming onto the store’s premises to solicit signatures on initiative petitions. (Id. at p. 109.) The Court of Appeal affirmed, concluding that under the state Constitution the walkway in front of *1093 the supermarket entrance was not a public forum. (107 Cal.App.4th at p. 110.) It remarked that the grocery store “does not invite the public to meet friends, to eat, to rest, to congregate, or to be entertained at its premises” (id. at p. 120), nor was the store or its entrance area “a place where people choose to come and meet and talk and spend time” (id. at p. 121).
In Van, two individuals brought class action lawsuits against Target Corporation, Wal-Mart Stores, Inc., and Home Depot, U.S.A., Inc., alleging that the defendant store owners had unlawfully prevented them from gathering signatures in front of their stores, many of which were in shopping centers. (Van, supra, 155 Cal.App.4th 1375, 1378-1379.) The plaintiffs sued as representatives of “a class of individuals who gather voter signatures for initiatives, referenda and recalls and register voters for upcoming elections.” (Id. at p. 1379.) They sought damages as well as declaratory, equitable, and injunctive relief. (Ibid.) The trial court denied relief, concluding that the areas in front of the entrances to individual stores located within shopping centers are not public forums for purposes of the state Constitution’s liberty of speech provision. (155 Cal.App.4th at p. 1381.)
The Court of Appeal in Van affirmed. It concluded that “neither respondents’ stores themselves nor the apron and perimeter areas of the stores were comprised of courtyards, plazas or other places designed to encourage patrons to spend time together or be entertained.” (Van, supra, 155 Cal.App.4th at pp. 1388-1389.) The court added that “the evidence showed that the stores are uniformly designed to encourage shopping as opposed to meeting friends, congregating or lingering.” (Id. at p. 1389.) The court concluded that the entrance and exit areas of the stores in question, which were located within shopping centers, “lacked any public forum attributes.” (Id. at p. 1391.)
We agree with these intermediate appellate decisions that to be a public forum under our state Constitution’s liberty of speech provision, an area within a shopping center must be designed and furnished in a way that induces shoppers to congregate for purposes of entertainment, relaxation, or conversation, and not merely to walk to or from a parking area, or to walk from one store to another, or to view a store’s merchandise and advertising displays.
That conclusion does not dispose of this case, however. We consider next the extent to which state labor law, and particularly the Moscone Act and section 1138.1, protect labor speech on private land in front of a business that is the subject of a labor dispute.
B. California’s Moscone Act and Section 1138.1
First, we review the language of those statutes. Next, we consider the extent to which they apply to labor picketing on private property in front of *1094 doorways used by customers to enter and exit a retail store. Finally, we review the Court of Appeal’s conclusion here that, because they give speech regarding labor disputes greater protection than speech on other topics, the Moscone Act and section 1138.1 violate the federal Constitution’s First and Fourteenth Amendments. As we explain, we disagree with the Court of Appeal on that point.
1. The Moscone Act
The California Legislature enacted the Moscone Act in 1975. (Stats. 1975, ch. 1156, § 2, p. 2845.) It was patterned after section 104 of title 29 of the United States Code, a federal statute that is part of the Norris-LaGuardia Act (29 U.S.C. §§ 101-115), which the United States Congress enacted in 1932. The stated purpose of California’s Moscone Act is “to promote the rights of workers to engage in concerted activities for the purpose of collective bargaining, picketing or other mutual aid or protection, and to prevent the evils which frequently occur when courts interfere with the normal process of dispute resolution between employers and recognized employee organizations.” (Code Civ. Proc., § 527.3, subd. (a).) It provides that certain activities undertaken during a labor dispute are legal and cannot be enjoined. (Id., § 527.3, subd. (b).) Those activities are: '
“(1) Giving publicity to, and obtaining or communicating information regarding the existence of, or the facts involved in, any labor dispute, whether by advertising, speaking, patrolling any public street or any place where any person or persons may lawfully be, or by any other method not involving fraud, violence or breach of the peace.
“(2) Peaceful picketing or patrolling involving any labor dispute, whether engaged in singly or in numbers.
“(3) Assembling peaceably to do any of the acts specified in paragraphs (1) and (2) or to promote lawful interests.” (Code Civ. Proc., § 527.3, subd. (b).)
Expressly excluded from the Moscone Act’s protection, however, is “conduct that is unlawful including breach of the peace, disorderly conduct, the unlawful blocking of access or egress to premises where a labor dispute exists, or other similar unlawful activity.” (Code Civ. Proc., § 527.3, subd. (e).)
2. Section 1138.1
Enacted by the California Legislature in 1999 (Stats. 1999, ch. 616, § 1, pp. 4343-4345), section 1138.1 was patterned after section 107 of title 29 *1095 of the United States Code; the federal provision is part of the federal Norris-LaGuardia Act. Section 1138.1 prohibits a court from issuing an injunction during a labor dispute unless, based upon witness testimony that is given in open court and is subject to cross-examination, the court finds each of these facts:
“(1) That unlawful acts have been threatened and will be committed unless restrained or have been committed and will be continued unless restrained, but no injunction or temporary restraining order shall be issued on account of any threat or unlawful act excepting against the person or persons, association, or organization making the threat or committing the unlawful act or actually authorizing] those acts.
“(2) That substantial and irreparable injury to complainant’s property will follow.
“(3) That as to each item of relief granted greater injury will be inflicted upon complainant by the denial of relief than will be inflicted upon defendants by the granting of relief.
“(4) That complainant has no adequate remedy at law.
“(5) That the public officers charged with the duty to protect complainant’s property are unable or unwilling to furnish adequate protection.” (§ 1138.1, subd. (a).)
3. Application to labor picketing at retail store entrances
As mentioned earlier (see p. 1094, ante), the Moscone Act declares that certain specified activities during a labor dispute are legal and cannot be enjoined. (Code Civ. Proc., § 527.3, subd. (b).) Among those activities are “patrolling any public street or any place where any person or persons may lawfully be” (id., subd. (b)(1), italics added) and “[p]eaceful picketing or patrolling” (id., subd. (b)(2)). Our 1979 decision in Sears, supra, 25 Cal.3d 317, considered whether these provisions covered picketing on a privately owned walkway in front of a store’s customer entrance, thereby exempting peaceful labor picketing of a targeted business from the laws of trespass. Before discussing our resolution of that issue in Sears, however, it will be useful to review some of this court’s earlier decisions.
Since at least 1964, when this court decided Schwartz-Torrance Investment Corp. v. Bakery & Confectionery Workers’ Union (1964) 61 Cal.2d 766 [40 Cal.Rptr. 233, 394 P.2d 921] (Schwartz-Torrance), California law has *1096 protected the right to engage in labor speech—including picketing, distributing handbills, and other speech activities—on private land in front of a business that is the subject of a labor dispute.
In Schwartz-Torrance, this court considered whether the owner of a shopping center was entitled to an injunction barring peaceful union picketing in front of a bakery located in the shopping center. We recognized that under California law a labor union has a right to engage in peaceful picketing on a private sidewalk in front of the business being targeted. Although our opinion noted that labor picketing is a form of speech and cited decisions of the United States Supreme Court construing the freedom of speech guarantee of the federal Constitution’s First Amendment (Schwartz-Torrance, supra, 61 Cal.2d at pp. 769-771), our holding ultimately was based not on federal constitutional law but on an analysis grounded in California labor law.
In Schwartz-Torrance, we began by characterizing the issue presented as “one of accommodating conflicting interests: plaintiff’s assertion of its right to the exclusive use of the shopping center premises to which the public in general has been invited as against the union’s right of communication of its position which, it asserts, rests upon public policy and constitutional protection.” (Schwartz-Torrance, supra, 61 Cal.2d at p. 768.) Considering first the union’s interest, we stated that “[picketing by a labor union constitutes an integral component of the process of collective bargaining . . . .” (Id. at pp. 768-769.) Citing Labor Code section 923, we stated that “[t]he Legislature has expressly declared that the public policy of California favors concerted activities of employees for the purpose of collective bargaining or other mutual aid or protection.” (Schwartz-Torrance, at p. 769.) Citing Penal Code section 552.1, we added that “the Legislature has enacted this policy into an exception to the criminal trespass law.” (Schwartz-Torrance, at p. 769.) Thus, we concluded, “ ‘the Legislature in dealing with trespasses . . . has specifically subordinated the rights of the property owner to those of persons engaging in lawful labor activities.’ ” (Ibid., quoting In re Zerbe (1964) 60 Cal.2d 666, 668 [36 Cal.Rptr. 286, 388 P.2d 182].) “Nor is the union’s interest in picketing diminished ...” we added, “because it may communicate its message at other, admittedly less advantageous, locations off plaintiff’s premises.” (Schwartz-Torrance, at p. 770.)
Turning to the property owner’s interest, we said in Schwartz-Torrance that it “emanates from the exclusive possession and enjoyment of private property.” (Schwartz-Torrance, supra, 61 Cal.2d at p. 771.) For land being used as a shopping center, however, the impairment of that interest resulting from peaceful labor picketing, was “largely theoretical” in view of the “public character of the shopping center.” (Ibid.) Quoting the United States Supreme Court, we said: “ ‘The more an owner, for his advantage, opens up his *1097 property for use by the public in general, the more do his rights become circumscribed by the statutory and constitutional rights of those who use it.’ ” (Ibid., quoting Marsh v. Alabama (1946) 326 U.S. 501, 506 [90 L.Ed. 265, 66 S.Ct. 276].) Thus, the plaintiff property owner “suffers no significant harm in the deprivation of absolute power to prohibit peaceful picketing upon property to which it has invited the entire public.” (Schwartz-Torrance, supra, 61 Cal.2d at p. 771.) We concluded in Schwartz-Torrance that the defendant union’s interest in communicating its message through peaceful picketing outweighed the plaintiff shopping center owner’s interest in preventing a “theoretical invasion of its right to exclusive control and possession of private property.” (Id. at p. 772.)
After reviewing sister-state decisions cited by the parties in Schwartz-Torrance, we summarized our holding in these terms: “[T]he picketing in the present case cannot be adjudged in the terms of absolute property rights; it must be considered as part of the law of labor relations, and a balance cast between the opposing interests of the union and the lessor of the shopping center. The prohibition of the picketing would in substance deprive the union of the opportunity to conduct its picketing at the most effective point of persuasion: the place of the involved business. The interest of the union thus rests upon the solid substance of public policy and constitutional right; the interest of the plaintiff lies in the shadow cast by a property right worn thin by public usage.” (Schwartz-Torrance, supra, 61 Cal.2d at pp. 774-775.)
Five years later, we again considered issues concerning labor picketing on private property in front of a retail store’s entrance in In re Lane (1969) 71 Cal.2d 872 [79 Cal.Rptr. 729, 457 P.2d 561] (Lane). There, a labor union officer was convicted of two misdemeanor offenses for continuing to distribute handbills on a privately owned sidewalk in front of customer entrances to a supermarket after the store’s owner insisted that he leave. (Id. at pp. 872-874.) The handbills urged customers not to patronize the supermarket because it advertised in newspapers owned by an individual with whom the union was engaged in a labor dispute. (Id. at p. 873.) On the union officer’s petition for a writ of habeas corpus, we granted relief, ordering that he be discharged from custody. (Id. at p. 879.)
Lane rested on our decision in Schwartz-Torrance, supra, 61 Cal.2d 766, and on the United States Supreme Court’s decision in Food Employees v. Logan Plaza (1968) 391 U.S. 308 [20 L.Ed.2d 603, 88 S.Ct. 1601] (Logan Plaza), which held that the freedom of speech guarantee of the federal Constitution’s First Amendment protected peaceful labor picketing of a business that was located in a shopping center and employed nonunion workers. (Lane, supra, 71 Cal.2d at pp. 874—878.) Concluding that Schwartz-Torrance and Logan Plaza were consistent with each other, we stated in *1098 Lane: “In essence they hold that when a business establishment invites the public generally to patronize its store and in doing so to traverse a sidewalk opened for access by the public[,] the fact of private ownership of the sidewalk does not operate to strip the members of the public of their rights to exercise First Amendment privileges on the sidewalk at or near the place of entry to the establishment.” (Lane, at p. 878.) Although the supermarket in Lane was not located in a shopping center, we did not attach any significance to that fact.
Three years later, in Lloyd Corp. v. Tanner (1972) 407 U.S. 551 [33 L.Ed.2d 131, 92 S.Ct. 2219] (Tanner), the United States Supreme Court modified its view of the federal Constitution’s protection for free speech activities on private property, holding that a privately owned shopping center could prohibit the distribution of handbills expressing political views unrelated to the business of the center. The high court in Tanner distinguished its earlier decision in Logan Plaza, supra, 391 U.S. 308, on the ground that the latter involved labor speech that was related to one of the businesses located in the shopping center. (Tanner, at p. 563.) Thereafter, in a case applying the high court’s decision in Tanner, we noted that our decisions in Schwartz-Torrance, supra, 61 Cal.2d 766, and in Lane, supra, 71 Cal.2d 872, were likewise distinguishable from Tanner as involving labor picketing of businesses with which the unions had a labor dispute. (Diamond v. Bland, supra, 11 Cal.3d 331, 334, fn. 3.)
Four years after its 1972 decision in Tanner, supra, 407 U.S. 551, the United States Supreme Court extended the holding of that case to encompass labor-related speech, overruling its 1968 decision in Logan Plaza, supra, 391 U.S. 308. (Hudgens v. NLRB (1976) 424 U.S. 507 [47 L.Ed.2d 196, 96 S.Ct. 1029].) Thus, the free speech guarantee of the federal Constitution’s First Amendment, as currently construed by the nation’s high court, does not extend to speech activities on privately owned sidewalks in front of the entrances to stores, whether or not those stores are located in shopping centers and whether or not the speech pertains to á labor dispute.
In 1979, this court again considered the subject of labor speech on private property in a case involving a trial court’s injunction prohibiting union picketing “on the privately owned sidewalks surrounding the Sears Chula Vista store even though the picketing was peaceful and did not interfere with access to the store.” (Sears, supra, 25 Cal.3d 317, 321 (plur. opn. of Tobriner, J.).) In overturning the injunction, the three-justice lead opinion relied on California’s Moscone Act. The Sears plurality stated: “Although the reach of the Moscone Act may in some respects be unclear, its language leaves no doubt but that the Legislature intended to insulate from the court’s injunctive power all union activity which, under prior California decisions, *1099 has been declared to be ‘lawful activity.’ ” (Sears, at p. 323 (plur. opn. of Tobriner, J.), italics omitted.)
The plurality in Sears stated that the language of the Moscone Act’s subdivision (b), “although broad and sweeping in scope and purpose, leaves some doubt respecting its application to the present context.” (Sears, supra, 25 Cal.3d at p. 324 (plur. opn. of Tobriner, J.).) That doubt centered on the provision declaring to be legal, and not subject to injunctive relief, the patrolling of “any place where any person or persons may lawfully be.” (Code Civ. Proc., § 527.3, subd. (b)(1).) The plurality found guidance in “the concluding clause of [the Moscone Act’s] subdivision (a),” providing that “ ‘the provisions of subdivision (b) . . . shall be strictly construed in accordance with existing law governing labor disputes with the purpose of avoiding any unnecessary judicial interference in labor disputes.’ ” (Sears, at p. 325 (plur. opn. of Tobriner, J.), quoting Code Civ. Proc., § 527.3, subd. (a).) This “existing law governing labor disputes,” the Sears plurality explained, encompassed Schwartz-Torrance, supra, 61 Cal.2d 766, and Lane, supra, 71 Cal'.2d 872, decisions that had “not been overruled or eroded in later cases” and that “established the legality of union picketing on private sidewalks outside a store as a matter of state labor law.” (Sears, at p. 328 (plur. opn. of Tobriner, J.).)
The Sears plurality then explained its conclusion about the proper construction of the Moscone Act: “As we noted earlier, subdivision (a) of the Moscone Act requires the anti-injunction provisions of subdivision (b) to ‘be strictly construed in accordance with existing law governing labor disputes with the purpose of avoiding any unnecessary judicial interference in labor disputes.’ ” (Sears, supra, 25 Cal.3d at p. 329 (plur. opn. of Tobriner, J.).) Construing subdivision (b) in accord with the holdings of Schwartz-Torrance, supra, 61 Cal.2d 766, and Lane, supra, 71 Cal.2d 872, which had established both “the legality of peaceful picketing on private walkways outside a store” and “the lack of necessity of judicial interference to protect any substantial right of the landowner,” the Sears plurality concluded that the Moscone Act’s subdivision (b) “bars the injunction issued in the instant case.” (Sears, at p. 329 (plur. opn. of Tobriner, J.).)[1]
*1100 4. Validity under the federal Constitution
In concluding that our state law’s Moscone Act and section 1138.1 violate the federal Constitution, the Court of Appeal here relied on two United States Supreme Court decisions, Police Department of Chicago v. Mosley (1972) 408 U.S. 92 [33 L.Ed.2d 212, 92 S.Ct. 2286] (Mosley) and Carey v. Brown (1980) 447 U.S. 455 [65 L.Ed.2d 263, 100 S.Ct. 2286] (Carey). Those decisions are distinguishable, however, as both involved laws that restricted speech in a public forum; by contrast, neither the Moscone Act nor section 1138.1 restricts speech, and the speech at issue here occurred on private property that is not a public forum for purposes of the federal Constitution’s free speech guarantee (Hudgens v. NLRB, supra, 424 U.S. 507; Tanner, supra, 407 U.S. 551).
In Mosley, a Chicago ordinance prohibited picketing “ ‘on a public way’ ” near a primary or secondary school, while the school was in session, but the ordinance permitted peaceful picketing regarding a labor dispute at the school. (Mosley, supra, 408 U.S. at pp. 92-93.) The United States Supreme Court concluded that the ordinance violated the federal Constitution’s equal protection guarantee. Stating that “the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content” (Mosley, at p. 95, italics added), the high court concluded that “[selective exclusions from a public forum may not be based on content alone, and may not be justified by reference to content alone” (id. at p. 96, italics added).
In Carey, an Illinois statute made it illegal “ ‘to picket before or about the residence or dwelling of any person,’ ” with an exception for “ ‘peaceful picketing of a place of employment involved in a labor dispute.’ ” (Carey, supra, 447 U.S. at p. 457.) Stating that “in prohibiting peaceful picketing on the public streets and sidewalks in residential neighborhoods, the Illinois statute regulates expressive conduct that falls within the First Amendment’s preserve” (id. at p. 460, italics added), the United States Supreme Court held the statute to be “constitutionally indistinguishable from the ordinance invalidated in Mosley” (ibid.). The Illinois statute’s constitutional flaw, the high court explained, was that it “discriminate^] between lawful and unlawful conduct based upon the content of the demonstrator’s communication” (ibid.).
The effect of the high court’s decisions in Mosley and Carey was to invalidate the challenged state and municipal laws, thus removing the general prohibition on picketing near schools in Mosley and the general prohibition on picketing in residential neighborhoods in Carey. (Mosley, supra, 408 U.S. at p. 94; Carey, supra, 447 U.S. at pp. 458-459; see Perry Ed. Assn. v. Perry *1101 Local Educators’ Assn. (1983) 460 U.S. 37, 54 [74 L.Ed.2d 794, 103 S.Ct. 948] (dis. opn. of Brennan, J.) [“In Mosley and Carey, we struck down prohibitions on peaceful picketing in a public forum.”].) By contrast, invalidating here the Moscone Act and section 1138.1 would not remove any restrictions on speech or enhance any opportunities for peaceful picketing or protest anywhere, including the privately owned walkway in front of the customer entrance to the College Square Foods Co store. This is because neither the Moscone Act nor section 1138.1 abridges speech.
The high court’s decisions in Mosley and Carey both involved speech on public streets and sidewalks, which are public forums under the federal Constitution’s First Amendment. Privately owned walkways in front of retail stores, by contrast, are not First Amendment public forums. (Hudgens v. NLRB, supra, 424 U.S. 507, 520-521; Tanner, supra, 407 U.S. 551, 570.) As the United States Supreme Court has said: “The key to [Mosley and Carey] was the presence of a public forum.” (Perry Ed. Assn. v. Perry Local Educators’ Assn., supra, 460 U.S. at p. 55, fn. omitted.) Because here the walkway in front of the College Square Foods Co store is not a First Amendment public forum, the holdings in Mosley and Carey do not apply.
As further support for its conclusion that California’s Moscone Act and section 1138.1 violate the federal Constitution’s First and Fourteenth Amendments, the Court of Appeal here cited the decision of the United States Court of Appeals for the District of Columbia Circuit in Waremart/N.LR.B., supra, 354 F.3d 870. At issue there was a ruling by the National Labor Relations Board that a California supermarket’s owner had violated the National Labor Relations Act (29 U.S.C. § 158(a)(1)) when it prohibited union agents from distributing handbills to supermarket customers in the store’s privately owned parking lot. In making that ruling, the board had concluded that under California law the supermarket owner did not have a right to exclude union representatives from its property. (Waremart/N.LR.B., at p. 872.) The board’s conclusion was based in part on our state’s Moscone Act, as construed by this court in Sears, supra, 25 Cal.3d 317. The federal appellate court disagreed with the board, holding that “the union organizers had no right under California law to engage in handbilling on the privately-owned parking lot of WinCo’s grocery store.” (Waremart/N.L.R.B., at p. 876.) Regarding the Moscone Act, the federal appellate court concluded, citing the United States Supreme Court’s decisions in Mosley, supra, 408 U.S. 92, and in Carey, supra, 447 U.S. 455, that the act “violates the First Amendment to the Constitution” insofar as it extends greater protection to speech regarding a labor dispute than to speech on other subjects. (Waremart/N.LR.B., at pp. 874-875.)
The analysis of the federal appellate decision in Waremart/N.L.R.B., supra, 354 F.3d 870, failed to recognize, however, that, as we explained earlier, *1102 neither the Moscone Act nor section 1138.1 of our state law restricts speech. Waremart/N.L.R.B.’’s analysis also failed to recognize that the United States Supreme Court’s decisions in Mosley, supra, 408 U.S. 92, and Carey, supra, 447 U.S. 455, both involved laws restricting speech in a public forum, as opposed to the situation here, involving laws that do not restrict speech and are being applied on privately owned property that is not a public forum under the First Amendment. For these reasons, we do not consider Waremart/N.L.R.B. persuasive on the issues we address here.
As this court has recognized, the decisions of the United States Supreme Court discussing speech regulations “do not require literal or absolute content neutrality, but instead require only that the [content-based] regulation be ‘justified’ by legitimate concerns that are unrelated to any ‘disagreement with the message’ conveyed by the speech.” (Los Angeles Alliance for Survival v. City of Los Angeles (2000) 22 Cal.4th 352, 368 [93 Cal.Rptr.2d 1, 993 P.2d 334]; accord, Fashion Valley Mall, LLC v. National Labor Relations Bd., supra, 42 Cal.4th atp. 867; DVD Copy Control Assn., Inc. v. Burner (2003) 31 Cal.4th 864, 877 [4 Cal.Rptr.3d 69, 75 P.3d 1].) The state law under which employees and labor unions are entitled to picket on the privately owned area outside the entrance to a shopping center supermarket is justified by the state’s interest in promoting collective bargaining to resolve labor disputes, the recognition that union picketing is a component of the collective bargaining process, and the understanding that the area outside the entrance of the targeted business often is “the most effective point of persuasion” (Schwartz-Torrance, supra, 61 Cal.2d 766, 774). These considerations are unrelated to disagreement with any message that may be conveyed by speech that is not related to a labor dispute with the targeted business.
Moreover, California’s Moscone Act and section 1138.1, insofar as they protect labor-related speech in the context of a statutory system of economic regulation of labor relations, are hardly unique. As we have seen (pp. 1094-1095, ante), both provisions are based on the federal Nonis-LaGuardia Act. The federal National Labor Relations Act (29 U.S.C. § 151 et seq.; NLRA) likewise provides content-based protections for labor-related speech in private workplaces. Under one of the NLRA’s provisions, it is unlawful for an employer to interfere with employees’ rights to form or join a union (29 U.S.C. § 158(a)(1)), and this provision has long been construed to protect an employee’s right to speak for or against a union on the employer’s premises, even though the employer may prohibit solicitations on other topics (Republic Aviation Corp. v. Board (1945) 324 U.S. 793 [89 L.Ed. 1372, 65 S.Ct. 982]). The NLRA expressly protects the right of employers to speak on the topic of unionization by providing that “[t]he expressing of any views, argument, or opinion, or the dissemination thereof . . . shall not constitute or be evidence of an unfair labor practice ... if such expression contains no threat of reprisal or force or promise of benefit.” (29 U.S.C. § 158(c).)
*1103 Decisions of the United States Supreme Court support the proposition that labor-related speech may be treated differently than speech on other topics. The high court’s decisions regarding the legality of secondary boycotts provide an example. In the labor context, the high court has upheld the constitutionality of the NLRA’s prohibitions on secondary picketing (NLRB v. Retail Store Employees (1980) 447 U.S. 607 [65 L.Ed.2d 377, 100 S.Ct. 2372]) and secondary boycotts {Longshoremen v. Allied International, Inc. (1982) 456 U.S. 212 [72 L.Ed.2d 21, 102 S.Ct. 1656]). When the high court later held that a secondary boycott by civil rights activists was constitutionally protected speech, it distinguished the NLRA cases on the ground that “[secondary boycotts and picketing by labor unions may be prohibited, as part of ‘Congress’ striking of the delicate balance between union freedom of expression and the ability of neutral employers, employees, and consumers to remain free from coerced participation in industrial strife.’ ” {NAACP v. Claiborne Hardware Co. (1982) 458 U.S. 886, 912 [73 L.Ed.2d 1215, 102 S.Ct. 3409], quoting NLRB v. Retail Store Employees, at pp. 617-618 (cone. opn. of Blackmun, J.).)
In another decision, which held that the NLRA does not preempt state court jurisdiction to determine whether a particular dispute over labor picketing should be enjoined, the high court did not suggest that special protections for labor speech would violate a federal constitutional rule mandating content neutrality in all speech regulation. {Sears, Roebuck & Co. v. Carpenters (1978) 436 U.S. 180, 199 [56 L.Ed.2d 209, 98 S.Ct. 1745].) In that decision, the court also recognized that the NLRA may exempt certain union activity on private property from state trespass laws. (436 U.S. at p. 204.)
Therefore, it is well settled that statutory law—state and federal—• may single out labor-related speech for particular protection or regulation, in the context of a statutory system of economic regulation of labor relations, without violating the federal Constitution.
As we have mentioned (p. 1094, ante), the Moscone Act’s purpose is “to promote the rights of workers to engage in concerted activities for the purpose of collective bargaining, picketing or other mutual aid or protection, and to prevent the evils which frequently occur when courts interfere with the normal process of dispute resolution between employers and recognized employee organizations.” (Code Civ. Proc., § 527.3, subd. (a).) As the United States Supreme Court has remarked, in regard to the federal NorrisLaGuardia Act (on which our state’s Moscone Act was modeled), the congressional purpose was not only “to protect the rights of [employees] to organize and bargain collectively,” but also to “withdraw federal courts from a type of controversy for which many believed they were ill-suited and from participation in which, it was feared, judicial prestige might suffer.” (Marine *1104 Cooks v. Panama S. S. Co. (I960) 362 U.S. 365, 370, fc. 7 [4 L.Ed.2d 797, 80 S.Ct. 779].) These legislative judgments provide a sufficient justification for the provisions of California’s Moscone Act and section 1138.1 that single out labor-related speech for special protection from unwarranted judicial interference.
For the reasons given above, we conclude that neither of the two state statutes at issue here—the Moscone Act and section 1138.1—violates the federal Constitution’s general prohibition on content-based speech regulation.
Summary and Disposition
A private sidewalk in front of a customer entrance to a retail store in a shopping center is not a public forum for purposes of expressive activity under ohr state Constitution’s liberty of speech provision as construed in Pruneyard, supra, 23 Cal.3d 899. On the private property of a shopping center, the public forum portion is limited to those areas that have been designed and furnished to permit and encourage the public to congregate and socialize at leisure.
California’s Moscone Act and section 1138.1 afford both substantive and procedural protections to peaceful union picketing on a private sidewalk outside a targeted retail store during a labor dispute, and such union picketing may not be enjoined on the ground that it constitutes a trespass. The Moscone Act and section 1138.1 do not violate the federal Constitution’s free speech or equal protection guarantees on the ground that they give speech regarding a labor dispute greater protection than speech on other subjects.
The Court of Appeal’s judgment is reversed and the matter is remanded for further proceedings consistent with this opinion.
Cantil-Sakauye, C. J., Baxter, J., Werdegar, 1, Corrigan, J., and Liu, J., concurred.

 In Sears, Justice Newman authored a separate opinion consisting of just two sentences: “I agree that the injunction order should be reversed, and I concur in nearly all of Justice Tobriner’s reasoning. He detects in the Moscone Act, however, certain ambiguities that to me do not seem to be confounding; and, unlike him, I do not believe that ‘the. Legislature . . . intended the courts to continue to follow [all] principles of California labor law extant at the time of the enactment of section 527.3.’ (Maj. opn., ante, at p. 330.)” (Sears, supra, 25 Cal.3d at p. 333 (conc. opn. of Newman, J.).) Thus, in Sears Justice Newman apparently agreed with the plurality that under the Moscone Act, a labor union’s peaceful picketing on a private sidewalk outside the entrance of a business that is the subject of a labor dispute is legal and may not be enjoined.