Filed 11/6/17 (mod); pub. order 11/15/17 follows unmodified opinion (attached)  reposted 4/6/18 to include mod. order.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| RALPHS GROCERY COMPANY et al.,<br><br>    Plaintiffs and Appellants,<br><br>    v.<br><br>VICTORY CONSULTANTS, INC. et al.,<br><br>    Defendants and Respondents. | D070804<br><br><br>(Super. Ct. No. 37-2015-00031668-<br> CU-NP-CTL)<br><br>ORDER MODIFYING OPINION<br><br>**[NO CHANGE IN JUDGMENT]** |

THE COURT:

The opinion filed on October 24, 2017 is modified as follows:

On page 17, first paragraph, next to last sentence, the word "Appellants" is

replaced with the word "Respondents."  It should read as follows:

"Respondents rely on *Pruneyard* to claim the Lemon Grove and San Diego stores

are public forums."

There is no change in judgment.

_____

HUFFMAN, Acting P. J.

Filed 10/24/17 (unmodified version)

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| RALPHS GROCERY COMPANY et al., | D070804 |
| Plaintiffs and Appellants, | |
| v. | (Super. Ct. No. 37-2015-00031668-CU-NP-CTL) |
| VICTORY CONSULTANTS, INC. et al., | |
| Defendants and Respondents. | |

APPEAL from an order of the Superior Court of San Diego County, Joan M. Lewis, Judge.  Reversed; remanded with directions.

Davis Wright Tremaine, Jacob M. Harper and Michael T. Baldock for Plaintiffs and Appellants.

Andrew Rauch, Andrew K. Rauch and Elizabeth MacKinnon for Defendants and Respondents.

Ralphs Grocery Company (Ralphs), Ralphs Grocery Company dba Food-4-Less (Food-4-Less), and Ralphs Grocery Company dba Foods Co. (Ralphs, Food-4-Less, and Foods Co. collectively Appellants) appeal an order striking their complaint against

Victory Consultants, Inc. (Victory) and Jerry Mailhot (Victory and Mailhot together Respondents) under Code of Civil Procedure[1] section 425.16 (the anti-SLAPP law). Appellants contend the superior court erred in determining that their complaint, which alleges a cause of action for trespass, arose out of activity protected by the anti-SLAPP law, and by concluding they failed to demonstrate a probability of succeeding on the merits of that cause of action.

We agree with Appellants. Respondents have not shown Appellants' cause of action for trespass arises out of protected activity. The acts constituting trespass are not protected activity. Although Respondents argue that Appellants are suing them based upon petitioning activity, which would typically be protected, such activity is occurring on private property. Respondents have provided no persuasive argument that their activity occurring on such private property is protected. Additionally, even if we were to reach the second question under an anti-SLAPP analysis, we would conclude Appellants carried their minimal burden of showing a probability of succeeding on the merits. We therefore reverse the order.

FACTUAL AND PROCEDURAL BACKGROUND

We state the background facts in this anti-SLAPP context from the complaint's allegations and the evidence proffered in connection with the motion.

Ralphs operates hundreds of "Ralphs" and "Food-4-Less" branded grocery stores throughout California. Two such stores, one located at 7420 Broadway in Lemon Grove

---

1    Statutory references are to the Code of Civil Procedure unless otherwise specified.

2

(Lemon Grove store) and the other located at 312 Euclid Avenue in San Diego (San Diego store), feature prominently in the instant action. These two stores have the same general physical structure. The individual stores have entrances providing customer access to the stores from a parking area. The same access point is used for egress and ingress. A sidewalk or apron is situated between the store access doors and a private driving lane, which runs between the store and the parking lot. On each side of a store's access doors exist two columns that rise from the sidewalk/aprons and leave about three feet of sidewalk space between the columns and curb. The curb and private driving lane area in front of the access doors is a designated fire lane.

The subject stores' purpose, like all stores owed by Ralphs, is to sell food products to customers. To that end, the stores house aisles of food and food-related goods as well as deli counters, cash registers, and other accoutrements serving customers. They do not offer amenities like plazas, walkways, central courtyards, or other gathering areas. Nor do they have attractions like theatres or other entertainment venues. The stores do not exist to provide a location for friends to meet or congregate.

The Lemon Grove and San Diego stores have two sets of doors, both for entry and exit, that lead to and are adjoining the parking lot. The sidewalk and apron runs between the store and a private driving lane abutting the parking lot. The curb and street area in front of the entrance and exit doors is designated a fire lane. These areas are all designed around the concept of helping customers enter and exit quickly and safely to buy food products.

3

The sidewalk and apron area in front of both the Lemon Grove and San Diego stores is not public. Appellants have exclusive control over those areas as well as the entrances and exits to the stores and the store premises.

Respondents operate petition signature gathering companies in Southern California. Respondents pay individuals to obtain signatures for various petitions and initiatives. Individuals who Appellants allege work for Respondents arrived at the Lemon Grove and San Diego stores to obtain petition signatures. "On a typical day, [these individuals set] up a table in the sidewalk/apron area, place belongings on that table, and rove around the sidewalk/apron area and parking lot to approach grocery store customers entering and exiting the store. They set up in the area directly between the store and fire lane." While soliciting at Appellants' stores, these individuals have disrupted store business by setting up tables directly in front of the store or private sidewalk areas, impeding fire lanes, obstructing customers' ingress and egress from the stores, standing in the way of fire lanes, following store customers into the parking lot, and harassing customers.

After receiving customers' complaints about Respondents' activities, Appellants' employees asked Respondents to leave the area. Respondents refused and asserted they were exercising their constitutional rights. Appellants' employees called law enforcement to assist, but law enforcement declined to remove Respondents from the stores' respective premises.

4

Ultimately, Appellants filed a lawsuit against Respondents, alleging causes of action for trespass and injunction.[2] Appellants claim to have lost substantial good will because of Respondents' actions.

Appellants also submitted an ex parte application for a temporary restraining order and an order to show cause regarding a preliminary injunction. Appellants submitted the declarations of John Kamisizian, store director of the Lemon Grove store, and Robert Nightingale, front end manager of the San Diego store, wherein both men declared they witnessed individuals gathering signatures in front of their respective stores who claimed to be working for Victory and Mailhot. At the ex parte hearing, Respondents claimed there was insufficient evidence to show they hired the individuals working at the Lemon Grove and San Diego stores. In addition, they asserted even if it could be shown that the individuals were working for Respondents, the individuals were independent contractors, and Respondents could not control their actions. In response, Appellants submitted supplemental briefing addressing agency and provided the declaration of Frank Mendez and supplemental declarations from Kamisizian and Nightingale.

Mendez is a private investigator hired by Appellants to "identify a group sending petition solicitors" to stores owned by Appellants, including the Lemon Grove store. He communicated with an individual gathering signatures in front of the Lemon Grove store. Mendez took pictures of the man (which were attached to Mendez's declaration), who

---

2       "Injunctive relief is a remedy, not a cause of action. [Citations.] A cause of action must exist before a court may grant a request for injunctive relief." (*Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 65.)

5

identified himself as Calvin Pierce. Pierce indicated that he worked for Victory and Mailhot. He provided Mendez with a business card from Victory as well as a small piece of paper that included Mailhot's name and contact information. The business card and paper with Mailhot's contact information were attached as exhibits to Mendez's declaration.

The supplemental declarations of Kamisizian and Nightingale identified Pierce from photographs taken by Mendez as depicting the individual they had seen in front of the Lemon Grove store (Kamisizian) and the San Diego store (Nightingale) collecting signatures on petitions.

In their supplemental briefing, Appellants addressed the possibility that the court could believe that additional evidence would be necessary to establish agency:

> "*If*, however, the Court believes additional evidence that is solely within the possession of these groups—such as the contracts themselves or testimony from representatives of Victory Consultants or Mailhot—is necessary, Ralphs respectfully requests that the Court enter the temporary restraining order (given the prima facie evidence supports Ralphs's right to protect its premises), set the OSC re preliminary injunction, and order expedited limited discovery into the relationship between Victory Consultants and Mailhot (on the one hand) and its solicitors (on the other)."

Respondents submitted a memorandum of points and authorities in opposition to the request for temporary restraining order. Among other arguments, Respondents argued the evidence allegedly establishing that their agents solicited customers for signatures at Appellants' stores was inadmissible hearsay. Respondents offered the declarations of Ron Tomczak, Victory's president, and Mailhot. Tomczak declared that Victory has no employees, and its primary method of conducting business is to enter into

6

independent contractor agreements with individuals. Tomczak emphasized that he does not direct Victory's independent contractors where to gather signatures and has no control over the methods, details, and means by which the independent contractors conduct their signature gathering.

Mailhot, who is the sole proprietor of California Petitions, declared that his business and business model is almost identical to Victory's, including entering into independent contractor agreements with signature gatherers.

The superior court ultimately granted a temporary restraining order, prohibiting Respondents from using the premises of the Lemon Grove or San Diego stores, including the sidewalk/apron areas as well as parking lots owned by Appellants, for their petitioning, soliciting, and expressive activity. The temporary restraining order also set an order to show cause hearing why an injunction should not issue.

Before that hearing, Respondents filed an anti-SLAPP motion, arguing the complaint arose from acts protected under the First Amendment of the United States Constitution as well as the California Constitution, and Appellants were not likely to prevail on the merits. In support of their motion, Respondents primarily relied on the same evidence it submitted to support its opposition to Appellants' application for a temporary restraining order.

Appellants opposed the motion, asserting (1) the anti-SLAPP statute was not applicable because the individuals' activity on the private sidewalk and apron areas was not protected speech under the United States and California Constitutions; and, in the alternative, (2) Appellants demonstrated a prima facie case of trespass. Like

7

Respondents, it appears that Appellants also relied on the evidence they submitted in support of their application for a temporary restraining order.

After considering the motion and opposition as well as the evidence submitted in support of both and entertaining oral argument, the court granted Respondents' anti-SLAPP motion. The court found that Appellants did not establish a probability of prevailing on the merits of their claim. Specifically, the court determined that Appellants "offered no admissible evidence that any individual purportedly collecting signatures was an agent or employee of the" Respondents. In making its determination, the court, among other evidentiary rulings that are not challenged here, sustained Respondents' objections to the Mendez declaration.

Appellants timely appealed.

DISCUSSION

I

*ANTI-SLAPP LAW AND STANDARD OF REVIEW*

"A SLAPP suit is 'a meritless lawsuit "filed primarily to chill the defendant's exercise of First Amendment rights." ' [Citations.] California's anti-SLAPP statute allows a defendant to move to dismiss 'certain unmeritorious claims that are brought to thwart constitutionally protected speech or petitioning activity.' " (*Medical Marijuana, Inc. v. ProjectCBD.com* (2016) 6 Cal.App.5th 602, 613.) Per the anti-SLAPP statute: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special

8

motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."  (§ 425.16, subd. (b)(1).)

A two-step analysis is required when the superior court is requested to rule on a special motion to strike under the anti-SLAPP statutory framework.  (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67.)  Recently, our high court summarized the showings and findings required by section 425.16, subdivision (b):

> "At the first step, the moving defendant bears the burden of identifying all allegations of protected activity, and the claims for relief supported by them.  When relief is sought based on allegations of both protected and unprotected activity, the unprotected activity is disregarded at this stage.  If the court determines that relief is sought based on allegations arising from activity protected by the statute, the second step is reached.  There, the burden shifts to the plaintiff to demonstrate that each challenged claim based on protected activity is legally sufficient and factually substantiated.  The court, without resolving evidentiary conflicts, must determine whether the plaintiff's showing, if accepted by the trier of fact, would be sufficient to sustain a favorable judgment.  If not, the claim is stricken.  Allegations of protected activity supporting the stricken claim are eliminated from the complaint, unless they also support a distinct claim on which the plaintiff has shown a probability of prevailing."  (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 396.)

We review rulings on anti-SLAPP motions de novo.  (*Freeman v. Schack* (2007) 154 Cal.App.4th 719, 727.)  We also consider the pleadings, and supporting and opposing affidavits, " ' "accept[ing] as true the evidence favorable to the plaintiff [citation] and evaluat[ing] the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law." ' "  (*Ibid.*)

9

II

*EVIDENTIARY ISSUES*

To determine the universe of evidence we may properly consider on our review, we address Appellants' contention that the trial court erred by excluding some of its evidence offered in opposition to Respondents' anti-SLAPP motion. Specifically, the court sustained Respondents' objections to the Mendez declaration. Respondents objected to paragraphs four, eight, and nine of Mendez's declaration because those paragraphs constituted improper opinion from a lay witness (Evid. Code, § 800); were irrelevant (Evid. Code, §§ 210, 350); and consisted of inadmissible hearsay (Evid. Code, § 1200). Although the court sustained these objections, it did not indicate on what grounds it did so.

The only Mendez declaration in the record was submitted in support of Appellants' ex parte application for a temporary restraining order. The three paragraphs of Mendez's declaration that Respondents objected to were as follows:

> "4. After taking photos of the individual from a distance, I approached him to inquire about how to get involved in soliciting petitions. The individual stated that he is a 'petition gatherer' and stated that he was attempting to secure Food-4-Less customer signatures on several different petitions, including reducing the size of classrooms and another issue dealing with blank checks. I asked the individual what company he 'works for,' and the individual stated that he 'works for Victory Consultants, Inc.' I thanked him for the information and asked his name, which he told me was Calvin Pierce."

> "8. First, the solicitor said he was working for Victory Consultants, Inc., which hired him to collect signatures for the (1) Reducing Class Sizes and (2) No Blank Check for Government initiatives. I asked how much Victory Consultants paid him to gather signatures at

10

Food-4-Less stores, and he said he gets $1.50 per signature. He also pulled out from his pocket one of the several business cards for Victory Consultants that he had in his pocket, which Victory Consultants gave to solicitors if they encountered individuals like me expressing an interest in collecting signatures. The Victory Consultants business card included a company emblem; the statements 'Initiatives/Signature Gathering' and 'Political Management'; an email address, website address, physical address, and phone numbers; and the names of Victory Consultants' principals, 'Ron & Jane Tomczak.' A true and correct copy of the Victory Consultants business card is included in Exhibit C."

"9. Second, the individual stated he was also working for Jerry Mailhot, who hired him to gather signatures at Food-4-Less for petitions relating to (3) Mandating Condoms for the Adult Film Industry; and (4) Lowering the Cost of Prescription Drugs, noted above. When I asked how much Mr. Mailhot pays to solicit signatures, the solicitor told me $.75 per signature. I also asked if he had a business card for Mr. Mailhot, and the solicitor pulled a small piece of paper stating 'Circulate Petitions' and listing Mr. Mailhot's name and phone number, along with another phone number for 'updates.' A true and correct copy of this piece of paper is included in Exhibit C."

We review the superior court's evidentiary rulings for abuse of discretion. (*Public Employees' Retirement System v. Moody's Investors Service, Inc.* (2014) 226 Cal.App.4th 643, 683.) Therefore, we will not overturn such a ruling on appeal "unless 'the trial court exceeded the bounds of reason, all of the circumstances before it being considered.' " (*Ibid.*)

Respondents argue the court properly excluded the evidence on hearsay grounds. We agree.

In Mendez's declaration, he discusses what Pierce told him. Appellants' are using Pierce's statements (e.g., he works for Victory and Mailhot) to try to establish he is Respondents' agent. As such, Pierce's statements are out-of-court statements offered for

11

the truth of the matter asserted.  (See Evid. Code, §1200, subd. (a).)  Appellants, however, argue an exception exists to overcome the evidence's exclusion.  Specifically, they assert Pierce's statements are admissible as declarations against interest.  (See Evid. Code, § 1230.)  We are not persuaded.

Evidence Code section 1230 establishes the declaration against interest exception and makes a hearsay statement admissible when (1) the declarant is unavailable; (2) the statement was against the declarant's interest when made; and (3) the statement was sufficiently reliable to warrant admission despite its hearsay character.  (*Clark v. Optical Coating Laboratory, Inc.* (2008) 165 Cal.App.4th 150, 170.)  Appellants, however, do not show Pierce was unavailable to testify (or provide a declaration) in this matter.  Thus, there is no exception to the hearsay in the subject paragraphs of Mendez's declaration.

However, there are portions of paragraphs four, eight, and nine that do not involve Mendez repeating what Pierce told him.  For example, in paragraph eight, Mendez indicates that Pierce handed him a Victory business card, which was one among many Victory cards Pierce possessed.  Respondents do not argue that the handing of the business card is a hearsay statement.  Further, Mendez attached a copy of the Victory business card to his declaration.  Respondents did not specifically object to this business card.  It does not appear that the superior court excluded this business card.

Similarly, in paragraph nine of his declaration, Mendez indicated that Pierce handed Mendez a piece of paper stating "Circulate Petitions" and listing Mr. Mailhot's name and phone number, along with another phone number for "updates."  Respondents do not argue that the handing of this piece of paper from Pierce to Mendez is a hearsay

12

statement.  Moreover, a copy of the piece of paper is attached to Mendez's declaration, and there is no indication in the record that Respondents specifically objected to the admission of the paper with Mailhot's information.  Also, it does not appear the superior court excluded this evidence.

Against this backdrop, for purposes of our analysis here, we will not consider paragraphs four, eight, and nine of Mendez's declaration to the extent Mendez is repeating what Pierce told him.  However, the fact that Pierce handed Mendez a business card from Victory (which were one of many cards Pierce had) as well as the paper with Mailhot's information is properly before us as is the card and paper themselves.

III

*WHETHER THE LAWSUIT FALLS WITHIN THE SCOPE OF THE STATUTE*

To make a showing under the first prong, Respondents need only establish a prima facie case that their alleged actions fell into one of the categories listed in section 425.16, subdivision (e).  (*Flately v. Maura* (2006) 39 Cal.4th 299, 314.)  They may do so by identifying the allegations of protected activity in the complaint and the claims for relief supported by them.  (See *Baral v. Schnitt*, *supra*, 1 Cal.5th at p. 396.)  As such, the analysis of the first prong focuses on the allegations of the complaint.

Section 425.16, subdivision (e), clarifies what speech constitutes an " 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue.' "  Such speech includes:  "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; (2) any written or oral

13

statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law; (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest; or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e).)

Here, the superior court concluded that Appellants' causes of action arose from acts of the right of petition or free speech under the United States and California Constitutions in connection with a public issue as defined in section 425.16, subdivision (e)(3) and (4.) Appellants argue the superior court erred. They maintain their lawsuit was not aimed to stifle speech or petitioning activity, but instead, to protect their private property from unauthorized disruption. To this end, Appellants insist the conduct at issue is trespass not signature gathering.

Appellants' frame their first cause of action as centering on the signature gatherer's "disruptive activity" not the petitioning activity itself. In the operative complaint, Appellants allege the activity forming the basis of their trespass claim as follows: setting up tables directly in front of the stores or private sidewalk areas; impeding fire lanes; obstructing customers' ingress and egress into the stores; standing in the way of fire lanes; following or chasing customers and scaring them; and harassing customers. Clearly, none of this activity would fall under the umbrella of anti-SLAPP protection.

14

Thus, we disregard this unprotected activity for purposes of our anti-SLAPP analysis. (See *Baral v. Schnitt*, *supra,* 1 Cal.5th at p. 396.)

That said, Respondents argue Appellants' complaint is aimed at protected activity, namely "soliciting." We note that the operative complaint does allege that Respondents and/or their agents are engaging in solicitation. Here, the solicitation appears to be the gathering of signatures on various petitions. However, Appellants also allege that the solicitation is occurring on their private property where Respondents do not have the right to engage in any such activity. Therefore, according to Appellants, the allegations in the operative complaint do not target any protected activity because the solicitation occurred on private property and is not protected under the First and Fourteenth Amendments of the United States Constitution. (See *Lloyd Corp. v. Tanner* (1972) 407 U.S. 551, 567 [concluding "the First and Fourteenth Amendments safeguard the rights of free speech and assembly by limitations on state action, not on action by the owner of private property"; italics omitted].) Appellants further assert the gathering of signatures on their premises is not protected under California law because "a private sidewalk in front of a customer entrance to a retail store in a shopping center is not a public forum for purposes of expressive activity." (*Ralphs Grocery Co. v. United Food & Commercial Workers Union Local 8* (2012) 55 Cal.4th 1083, 1104 (*Ralphs Grocery*); see *Trader Joe's Co. v. Progressive Campaigns, Inc.* (1999) 73 Cal.App.4th 425, 427, 437 (*Trader Joe's*) [applying the balancing test set forth in *Robins v. Pruneyard Shopping Center* (1979) 23 Cal.3d 899 (*Pruneyard*)].)

In the instant matter, the superior court eschewed any application of the *Pruneyard* balancing test, finding the determination of that issue more appropriate for the second prong of the anti-SLAPP inquiry, namely whether Appellants can establish a probability of prevailing. We disagree with this approach. Instead, we believe any analysis under *Pruneyard*, *supra*, 23 Cal.3d 899 must occur under the first prong of the anti-SLAPP analysis because the critical inquiry is whether protected activity is challenged in the complaint. (See e.g., *Jackson v. Mayweather* (2017) 10 Cal.App.5th 1240, 1252 [comments on boxer's social media pages and comments during broadcast were made in a public forum for purposes of the first prong]; *Cabrera v. Alam* (2011) 197 Cal.App.4th 1077, 1087 [homeowner's association board meetings constitute a public forum for purposes of the first prong].) In other words, for purpose of an anti-SLAPP motion, we must determine if the defendant has established a prima facie case that their alleged actions fell into one of the categories listed in section 425.16, subdivision (e). (*Flately v. Maura*, *supra,* 39 Cal.4th at p. 314.) Where the complaint includes allegations that the challenged conduct occurred on private property, which would render the conduct unprotected for anti-SLAPP purposes, we must consider those allegations as part of our first prong analysis. If we do not, we cannot determine whether that the cause of action arises out of protected activity.

Here, Appellants have alleged that any solicitation that occurred in front of the two subject stores occurred on private property, and thus, is not protected activity. It is Respondents' burden to show that Appellants are incorrect and that the complaint is directed at protected activity. They have not carried their burden.

16

Generally, landowners and tenants have a right to exclude persons from trespassing on private property; the right to exclude persons is a fundamental aspect of private property ownership. (See *Loretto v. Teleprompter Manhattan CATV Corp.* (1982) 458 U.S. 419, 435.) "The right to exclude persons exercising First Amendment rights, however, is not absolute. Our Supreme Court held in [*Pruneyard*,] *supra*, 23 Cal.3d 899, that when private property is generally open to the public and functions as the equivalent of a traditional public forum, then the California Constitution protected speech, reasonably exercised, on the property, even though the property was privately owned." (*Allred v. Harris* (1993) 14 Cal.App.4th 1386, 1390.) Appellants rely on *Pruneyard* to claim the Lemon Grove and San Diego stores are public forums. We disagree.

The Supreme Court's reasoning in *Pruneyard* "determines the scope of that decision's application. That reasoning is most apt in regard to shopping centers' common areas, which generally have seating and other amenities producing a congenial environment that encourages passing shoppers to stop and linger and to leisurely congregate for purposes of relaxation and conversation. By contrast, areas immediately adjacent to the entrances of individual stores typically lack seating and are not designed to promote relaxation and socializing. Instead, those areas serve utilitarian purposes of facilitating customers' entrance to and exit from the stores and also, from the stores' perspective, advertising the goods and services available within. Soliciting signatures on initiative petitions, distributing handbills, and similar expressive activities pose a significantly greater risk of interfering with normal business operations when those activities are conducted in close proximity to the entrances and exits of individual stores

17

rather than in the less heavily trafficked and more congenial common areas. Therefore, within a shopping center or mall, the areas outside individual stores' customer entrances and exits, at least as typically configured and furnished, are not public forums under this court's decision in *Pruneyard*, *supra*, 23 Cal.3d 899." (*Ralphs Grocery*, *supra*, 55 Cal.4th at p. 1092.)

"[T]o be a public forum under our state Constitution's liberty of speech provision, an area within a shopping center must be designed and furnished in a way that induces shoppers to congregate for purposes of entertainment, relaxation, or conversation, and not merely to walk to or from a parking area, or to walk from one store to another, or to view a store's merchandise and advertising displays." (*Ralphs Grocery*, *supra*, 55 Cal.4th at p. 1093.)

As pointed out in *Trader Joe's*, *supra*, 73 Cal.App.4th 425, "*Pruneyard* instructs us to balance the competing interests of the property owner and of the society with respect to the particular property or type of property at issue to determine whether there is a state constitutional right to engage in the challenged activity." (*Trader Joe's*, *supra*, at p. 433.) *Pruneyard*, *supra*, 23 Cal.3d 899 did not hold that free speech and petitioning activity can be exercised only at large shopping centers or that such activities can be exercised on any property except for individual residences and modest retail establishments. (*Trader Joe's*, *supra*, at p. 433.)

Respondents point to no allegations in the operative complaint that support their claim that the front of the subject stores should be considered a public forum for purposes of our analysis under *Pruneyard*, *supra*, 23 Cal.3d 899. Further, Respondents provided

18

no evidence regarding the Lemon Grove and San Diego stores that supports their argument that they were engaging in protected activity. For example, Respondents emphasize various in store campaigns Appellants undertook. These campaigns that allegedly occurred within the store have no bearing on the public or private nature of the sidewalk in front of the subject stores. Respondents also argue that Appellants allow certain solicitation to occur on their properties. To this end, Respondents rely on a "statement on the official website of Ralphs" that shows a picture of a child making a donation at a metal tripod holding a red kettle at the entrance of a Ralphs store. The website statement indicates that donations are made at the "storefront." However, there is no evidence in the record that the Salvation Army has solicited donations in front of the Lemon Grove or San Diego stores. Thus, the statement from Ralphs' website does not offer any support for Respondents' argument under *Pruneyard*. In addition, Respondents discuss the physical characteristics of stores other than the Lemon Grove or San Diego stores. As the trespass claims here only concern those two stores, how other stores are constructed or maintained is not of the moment.

In short, Respondents have not carried their burden of establishing that the petitioning activity engaged in at the front of the two subject stores was protected for purposes of the first prong of our anti-SLAPP analysis. Moreover, Appellants provided undisputed evidence that the Lemon Grove store is in a retail shop development with a purpose to sell food products to customers. The Lemon Grove store is designed to provide customers easy access in and out of the store. To this end, the Lemon Grove store has one set of entrance doors and one set of exit doors. On each side of these doors

19

stand two columns that rise from the sidewalk/apron areas. The curb and street area in front of the doors is designated a fire lane. The store does not offer amenities like plazas, walkways or central courtyards and other gathering areas or attractions like theaters or entertainment amenities. The invitation to the public to use the Lemon Grove store does not extend to people to meet friends, be entertained, or congregate for any purpose other than shopping. Also, Ralphs has exclusive control over the Lemon Grove store structure, its entrance and exit ways, and the surrounding sidewalk/apron areas.

Appellants also offered nearly identical evidence about the San Diego store.

Despite Respondents' claim to the contrary, the allegations of the operative complaint and the evidence shows that Appellants open their Lemon Grove and San Diego stores to the public so the public can buy goods. They do not offer their property for any other use. Thus, in contrast to the multipurpose shopping centers like the one discussed in *Pruneyard*, *supra*, 23 Cal.3d 899, the Lemon Grove and San Diego stores do not have a public character that would support a finding that Respondents were engaging in protected activity for purposes of their anti-SLAPP motion. (See *Trader Joe's*, *supra,* 73 Cal.App.4th at p. 434.)

20

IV

*PROBABILITY OF SUCCESS ON THE MERITS*

Because we conclude Appellants have not carried their burden as to the first prong, we need not address the parties' arguments as to the second prong. Nevertheless, even if we considered the second prong, we would find that Appellants satisfied their minimal burden of showing a probability of prevailing on their trespass claim.

The second prong of the statute deals with whether the plaintiff has "demonstrated a probability of prevailing on the claim." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 88 (*Navellier*).) Under section 425.16, subdivision (b)(2), the superior court, in making these determinations, considers "the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." (*Ibid*.) For purposes of an anti-SLAPP motion, "[t]he court considers the pleadings and evidence submitted by both sides, but does not weigh credibility or compare the weight of the evidence. Rather, the court's responsibility is to accept as true the evidence favorable to the plaintiff." (*HMS Capital, Inc. v. Lawyers Title Co.* (2004) 118 Cal.App.4th 204, 212.) A plaintiff "need only establish that his or her claim has 'minimal merit' [citation] to avoid being stricken as a SLAPP." (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 291.) In this sense, the anti-SLAPP statute operates like a "motion for summary judgment in 'reverse.' " (*College Hospital Inc. v. Superior Court* (1994) 8 Cal.4th 704, 719; see *Tichinin v. City of Morgan Hill* (2009) 177 Cal.App.4th 1049, 1062 ["a standard 'similar to that employed in determining nonsuit, directed verdict or summary judgment motions' "]; *Kyle v. Carmon* (1999) 71 Cal.App.4th 901, 907 [same]; *Yu v. Signet*

21

*Bank/Virginia* (2002) 103 Cal.App.4th 298, 317 ["plaintiff's burden as to the second prong of the anti-SLAPP test is akin to that of a party opposing a motion for summary judgment"].)  With these descriptions in mind, we will not strike a cause of action under the anti-SLAPP statute unless it lacks even minimal merit.  (*Navellier*, *supra*, at p. 89.)

In the instant action, Appellants have sued Respondents for trespass.  "Trespass is an unlawful interference with possession of property."  (*Staples v. Hoefke* (1987) 189 Cal.App.3d 1397, 1406.)  The elements of trespass are:  (1) the plaintiff's ownership or control of the property; (2) the defendant's intentional, reckless, or negligent entry onto the property; (3) lack of permission for the entry or acts in excess of permission; (4) harm; and (5) the defendant's conduct was a substantial factor in causing the harm. (See CACI No. 2000.)

Here, there is no dispute that Appellants have provided sufficient evidence to establish a prima facie case that the individual collecting signatures on the store premises was trespassing.  In their opening brief, Appellants lay out the evidence of the elements of trespass and Respondents do not refute any of that evidence in the respondents' brief. Instead, they reiterate that there is no evidence that the individual gathering signatures was their agent.

In granting Respondents' anti-SLAPP motion, the superior court agreed with Respondents.  Specifically, the superior court found Appellants did not meet their burden "because they offered no admissible evidence that any individual purportedly collecting signatures was an agent or employee of [Respondents]."  The court further emphasized, "as [Respondents] explain in their declarations, they have no agents that solicit signatures

22

on petitions. They also assert that neither they nor any of their employees have ever solicited signatures for petitions on any property owned by [Appellants]."

In their brief, Respondents again emphasize that the signature gatherer at the Lemon Grove and San Diego stores was not their agent. To this end, Respondents assert that the subject signature gatherer was their independent contractor. However, this assertion does not establish the signature gatherer was not also Respondents' agent as a matter of law. " 'Agency and independent contractorship are not necessarily mutually exclusive legal categories as independent contractor and servant or employee are. In other words, an agent may also be an independent contractor.' " (*Jackson v. AEG Live, LLC* (2015) 233 Cal.App.4th 1156, 1184; italics omitted.)

"An agent is one who represents another, called the principal, in dealings with third persons. Such representation is called agency." (Civ. Code, § 2295.) "An agent for a particular act or transaction is called a special agent. All others are general agents." (Civ. Code, § 2297.) "An agency relationship 'may be implied based on conduct and circumstances.' " (*Borders Online v. State Bd. of Equalization* (2005) 129 Cal.App.4th 1179, 1189.)

"[W]hether an agency relationship has been created or exists is determined by the relation of the parties as they in fact exist by agreement or acts [citation], and the primary right of control is particularly persuasive. [Citations.] Other factors may be considered to determine if an independent contractor is acting as an agent, including: whether the 'principal' and 'agent' are engaged in distinct occupations; the skill required to perform the 'agent's' work; whether the 'principal' or 'agent' supplies the workplace and tools; the

23

length of time for completion; whether the work is part of the 'principal's' regular business; and whether the parties intended to create an agent/principal relationship." (*APSB Bancorp v. Thornton Grant* (1994) 26 Cal.App.4th 926, 932-933.)

Appellants contend the superior court erred in finding they had not submitted evidence establishing a prima facie case of agency. In support of their position, Appellants point to the following evidence. In his declaration, Tomczak states that Victory contracts with various organizations to circulate petitions and gather signatures of registered voters to qualify the petitions for placement of ballots. To carry out its objectives, Victory in turn enters into independent contractor agreements with individuals who gather signatures and addresses of registered voters on the various petitions.

Attached to Tomczak's declaration was an authenticated copy of a document entitled, "Contract for Services." Tomczak admitted that this document is a "standard form of independent contractor's agreement that is used by Victory." That agreement states that no employee-employer relationship exists between the individual signing the agreement and Victory and that neither party is to be considered the agent of the other party. However, the agreement states that the independent contractor will provide Victory with "processed signatures . . . of persons registered to vote in counties, cities, districts or other areas so designated by [Victory]."

Per the agreement, Victory agrees to pay the contractor a sum per signature with deductions for signatures that "are invalid for reasons other than non-registered voters." The agreement also provides that Victory will only pay a contractor for signatures with all information boxes filled in correctly and legibly by the signer of the petition, for

24

petitions with declarations filled in correctly and legibly by the circulator of the petitions, and for valid signatures submitted before the "shutdown deadline."

The agreement also sets forth the "Method and Hour of Performing Services" as follows:

> "Contractor agrees to perform the above-described services on the Contractor's premises during the hours which the Contractor determines and understands that he/she is an independent contractor, with no special training or regular hours and will furnish all his/her materials, determine the method, details and means of performing the above-described services. It is presumed, however, that the Contractor will conform to the generally accepted business practices of the region or locale where conducting business, including but not limited to the filing of Fictitious Business Statement when applicable, the holding of a business license and the compliance with all federal, state, and local laws, regulations and rules."

In addition, the contractor warrants that "all work done under" the agreement will comply with California Election Code sections 29720 through 29795[3] and Government Code sections 84303 and 84221. Also, the agreement contains an indemnity provision that requires the contractor to indemnify and hold harmless Victory "from any and all claims, demands, costs or liabilities arising from or connected with the services provided in this Agreement due to negligent acts, errors or omissions or for any acts or omissions which are due to willful misconduct on the part of the Contractor . . . ."

In summary, the independent contractor agreement used by Victory states Victory would pay the individual contractor per valid signature. Victory informs the independent contractor what type of signature is needed (e.g., voter in San Diego County or City of

---

[3] The Election Code sections referred to in the agreement were repealed in 1994.

San Diego) and there is a deadline by which the signatures must be obtained and provided to Victory. Victory presumes the individual contractor is going to comply with applicable laws. And, in the event Victory faces any liability for the acts of the independent contractor, the independent contractor must indemnify Victory.[4]

Appellants additionally emphasize that they submitted evidence to show the individuals at the two stores are agents of Respondents. For example, Nightingale's declaration dated September 17, 2015 stated that individuals identifying themselves as working for Victory and/or Mailhot had been soliciting signatures in front of the San Diego store. In a subsequent declaration, Nightingale authenticated a picture of one of the individuals (Pierce) gathering signatures in front of the San Diego store.[5]

In addition, Kamisizian offered a similar declaration regarding the individual soliciting signatures in front of the Lemon Grove store and provided a supplemental declaration authenticating a picture of the individual (Pierce) as well.[6]

Finally, there is evidence that Pierce handed Mendez a Victory business card, which was one of many Pierce possessed. And Pierce also handed Mendez a piece of paper with Mailhot's contact information.

---

[4]   Mailhot submitted a declaration wherein he stated that he conducts business in a similar manner to Victory.

[5]   Respondents objected to this portion of Nightingale's supplemental declaration, but the court overruled the objection.

[6]   Respondents objected to this portion of Kamisizian's supplemental declaration, but the court overruled the objection.

Keeping in mind that Appellants need only establish their trespass claim has "minimal merit" (*Soukup v. Law Offices of Herbert Hafif*, *supra*, 39 Cal.4th at p. 291) and it is our "responsibility . . . to accept as true the evidence favorable to the plaintiff" (*HMS Capital, Inc. v. Lawyers Title Co.*, *supra*, 118 Cal.App.4th at p. 212), we determine that Appellants have done enough to demonstrate a probability of prevailing on the trespass claim. For that claim here, Appellants have offered sufficient evidence to make a prima facie case of agency.

Respondents concede they presented evidence that Pierce is their independent contractor. Victory's independent contractor agreement shows that Victory provides its independent contractors with petitions, the types of signatures it needs on each petition, and a deadline by which petitions are due. It requires the independent contractor to gather valid signatures satisfying the criteria provided by Victory, and Victory will only pay the independent contractor for signatures that comply with its criteria. Further, the agreement shows that Victory expects the independent contractor to comply with federal and California law, including portions of the California Election and Government Codes. Mailhot indicated he conducted business very similarly to Victory's methods.

In addition, Nightingale stated in his declaration that an individual gathering signatures in front of the Lemon Grove store told him he worked for Victory and Mailhot. Respondents did not object to this portion of the declaration, and thus, this evidence is properly before us. In his declaration, Kamisizian declared that an individual working for Victory and Mailhot was gathering signatures on petitions in front of the San Diego store. Respondents did not object to this portion of the declaration, and thus, this evidence is

27

properly before us. Both Nightingale and Kamisizian identified a picture of Pierce as showing the individual who was gathering signatures in front of their stores. And Pierce possessed many Victory business cards and handed one to Mendez as well as handing him a piece of paper with Mailhot's contact information.

With this evidence, Appellants have shown a prima facie case for agency. Put differently, such evidence would be sufficient to withstand a motion for summary judgment, nonsuit, or directed verdict.[7] (See *Tichinin v. City of Morgan Hill*, *supra*, 177 Cal.App.4th at p. 1062.) Accordingly, Appellants have shown a probability of success on the merits, and the superior court erred in granting the anti-SLAPP motion on these grounds.[8]

---

[7] We are aware that Respondents submitted evidence they believe shows Pierce was not their agent, specifically declarations stating that they have no control over how independent contractors gather signatures. No doubt they will present this evidence to the court for purposes of a summary judgment or to the jury at trial, but here, where we are analyzing the second prong of the anti-SLAPP test, we do not weigh credibility or compare the weight of the evidence. (*HMS Capital, Inc. v. Lawyers Title Co*., *supra*, 118 Cal.App.4th at p. 212.) In other words, Respondents' evidence does not and cannot negate Appellants' evidence unless it shows Appellants cannot prove agency as a matter of law. Respondents' evidence falls far short of that high hurdle.

[8] We observe that Respondents' anti-SLAPP motion presents a curious use of the anti-SLAPP statute. "The anti-SLAPP procedures are designed to shield a defendant's constitutionally protected *conduct* from the undue burden of frivolous litigation." (*Baral v. Schnitt*, *supra*, 1 Cal.5th at p. 393; italics omitted.) Here, even if Respondents' anti-SLAPP motion was successful, it does not achieve the statute's purpose. Respondents' primary argument is that they have not and do not engage in the protected activity at issue in the operative complaint. Thus, the anti-SLAPP motion in the instant matter is not guarding Respondents as they engage in constitutionally protected contact. In this sense, it appears their motion is more appropriately brought as a motion for summary judgment.

DISPOSITION

The order is reversed.  This case is remanded to the superior court with instructions to enter an order denying Respondents' anti-SLAPP motion.  Appellants are entitled to their costs on appeal.


HUFFMAN, Acting P. J.

WE CONCUR:


IRION, J.


DATO, J.

29

Filed 11/15/17

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| RALPHS GROCERY COMPANY et al.,<br><br>    Plaintiffs and Appellants,<br><br>    v.<br><br>VICTORY CONSULTANTS, INC. et al.,<br><br>    Defendants and Respondents. | D070804<br><br><br><br>(Super. Ct. No. 37-2015-00031668-<br>CU-NP-CTL)<br><br>ORDER CERTIFYING OPINION<br>FOR PUBLICATION |

THE COURT:

The opinion in this case filed October 24, 2017 was not certified for publication. It appearing the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c), the request pursuant to California Rules of Court, rule 8.1120(a), for publication is GRANTED.

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c); and

ORDERED that the words "Not to Be Published in the Official Reports" appearing on page one of said opinion be deleted and the opinion herein be published in the Official Reports.

_____
Acting Presiding Justice

cc:  All Parties