Filed 7/13/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| GOLDEN GATE LAND HOLDINGS LLC et al., <br><br>     Plaintiffs and Respondents, <br><br> v. <br><br> DIRECT ACTION EVERYWHERE, <br><br>     Defendant and Appellant. | A163315 <br><br> (Alameda County <br> Super. Ct. No. RG21091697) |

Defendant Direct Action Everywhere (Direct Action) appeals from a trial court order denying an anti-SLAPP[1] motion seeking to strike claims brought against it by plaintiffs Golden Gate Land Holdings, LLC, and two related corporate entities (collectively, Golden Gate).[2]  We affirm.  In doing so, we hold that claims alleging that an advocacy organization is vicariously liable for a third party's illegal conduct may be subject to a demurrer or other summary challenge, but they cannot be stricken under the anti-SLAPP statute unless the organization's alleged liability is premised on constitutionally protected activity.

---

[1] "SLAPP is an acronym for 'strategic lawsuit against public participation.' " (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 732, fn. 1.)  The anti-SLAPP motion was brought under Code of Civil Procedure section 425.16 (the "anti-SLAPP statute").  All statutory references are to the Code of Civil Procedure.

[2] The two other entities are Pacific Racing Association d/b/a Golden Gate Fields and Pacific Racing Association II d/b/a Golden Gate Fields.

1

Golden Gate, which operates a horse racing track in Berkeley, filed this suit against Direct Action, an animal rights organization, and four individual defendants who are not parties to this appeal.[3]  The complaint's general allegations asserted that the four individuals, who were "affiliated with [Direct Action]," "climbed over [a] fence surrounding the horse racing track at [Golden Gate Fields (GGF)], trespassing on the GGF property," "lit incendiary devices that sent purple smoke into the air," "[lay] down directly on the racing track," and "connected their arms using PVC piping to make it difficult, if not impossible, for them to be physically removed."  The "trespassers remained on the track for several hours," preventing scheduled horse races from taking place.  Eventually, "the trespassers were removed by the police" and "criminally charged."

The complaint included two causes of action:  one for trespass, and the other for intentional interference with prospective economic relations, in that the trespass "proximately caused [Golden Gate] to incur economic harm."  The complaint also sought to "enjoin[] Defendants, their agents, officers, directors, employees, and those acting in aid of or in concert with them from trespassing on GGF."

Allegations tying Direct Action to the trespass asserted that the defendants were affiliated with each other and liable under various theories of relationship liability.  Specifically, the complaint alleged that "each of the defendants . . . was . . . the agent, co-conspirator, aider and abettor, employee, representative, co-venturer, and/or alter ego of each and every other

---

[3] The complaint alleges that Direct Action "is a nonprofit, 501(c)(3) corporation."

defendant, and in doing the thing hereinafter mentioned was acting within the course and scope of his, her, or its authority as such agent, co-conspirator, aider and abettor, employee, co-venturer, partner, and representative, and with the permission and consent of such other defendants." The complaint did not specify the circumstances upon which Direct Action's alleged vicarious liability was based.

Direct Action responded to the complaint by filing an anti-SLAPP motion, claiming it was sued for engaging in constitutionally protected activity. It maintained it was sued "for opposing [Golden Gate's] horse racing business, gathering signatures on a petition . . . to close [Golden Gate's] business, and allegedly organizing protests against the horse track." It claimed it "had no involvement in the civil disobedience that unfolded at the track." According to our record, Direct Action did not demur to the complaint or, with the exception of the anti-SLAPP motion, file any other dispositive motion.

The trial court denied the anti-SLAPP motion, ruling that Direct Action failed to meet its initial burden to show that the complaint challenged protected activity. As a result, the court did not address whether Golden Gate had demonstrated a probability of prevailing on its claims.

II.
DISCUSSION

A.    *General Legal Standards*

The anti-SLAPP statute allows a defendant to move to dismiss "certain unmeritorious claims that are brought to thwart constitutionally protected speech or petitioning activity." (*Robinzine v. Vicory* (2006) 143 Cal.App.4th 1416, 1420–1421.) The heart of the statute states: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the

3

California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).)

In deciding whether to grant a defendant's anti-SLAPP motion, courts engage in a two-step, burden-shifting analysis. (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1061 (*Park*).) Under the first step, a court considers whether the defendant has made "a prima facie showing that the plaintiff's 'cause of action . . . aris[es] from' an act by the defendant 'in furtherance of the [defendant's] right of petition or free speech . . . in connection with a public issue.' " (*Simpson Strong-Tie Co., Inc. v. Gore* (2010) 49 Cal.4th 12, 21, quoting § 425.16, subd. (b)(1).) To make such a showing, the defendant need not demonstrate that its actions were protected as a matter of law, but need only establish a prima facie case that the actions fell into one of the categories listed in section 425.16, subdivision (e). (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 314.) If the defendant cannot make such a showing, the anti-SLAPP motion must be denied, and the plaintiff is entitled to continue to litigate the cause of action. (See *ibid.*; *City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 80–81.)

But if the defendant *can* make such a showing, the analysis proceeds to the second step where the burden shifts to the plaintiff to demonstrate "that there is a probability that [it] will prevail on the [cause of action]." (§ 425.16, subd. (b)(1).) To meet this burden, " 'the plaintiff "must demonstrate that the [cause of action] is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." ' " (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 88–89.) If the plaintiff meets this burden, the anti-SLAPP

4

motion must be denied, and the plaintiff is entitled to continue to litigate the cause of action. (See *Flatley v. Mauro*, *supra*, 39 Cal.4th at p. 332 & fn. 16.)

Thus, an anti-SLAPP motion may be granted only if the defendant first shows that its conduct was constitutionally protected and the plaintiff then fails to "demonstrate its claims have at least 'minimal merit.' " (*Park, supra*, 2 Cal.5th at p. 1061.) Stated another way, a trial court may *grant* an anti-SLAPP motion—i.e., strike a claim—only if it finds, after applying *both* steps of the analysis, that the claim is based on protected activity *and* lacks minimal merit. But a trial court must *deny* an anti-SLAPP motion—i.e., allow the claim to proceed—if it finds, after applying *either* step of the analysis, that the claim is not based on protected activity *or* has at least minimal merit. We review de novo the denial of an anti-SLAPP motion. (*Id.* at p. 1067.)

> B.  *The Trial Court Properly Denied the Anti-SLAPP Motion Because Direct Action Failed To Make a Prima Facie Showing that the Claims Against It Arose from Protected Activity.*

Direct Action contends that "Golden Gate sued [it] over its speech in public forums on an issue of public interest." We cannot agree. The only fair reading of the complaint is that the wrong on which the claims against Direct Action are based was the organization's alleged involvement in the illegal trespass, not its speech or petitioning activity. We therefore agree with the trial court that Direct Action failed to satisfy its burden under the first step of the anti-SLAPP analysis.[4]

---

[4] We accepted and have considered two briefs submitted by amici curiae. The first was submitted on behalf of the First Amendment Coalition, the American Civil Liberties Union of Northern California, the California News Publishers Association, and Californians Aware. The second was submitted on behalf of Amazon Watch, the Civil Liberties Defense Center,

The anti-SLAPP statute's "phrase 'cause of action . . . arising from' means simply that the defendant's act underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech.  [Citation.]  In the anti-SLAPP context, the critical point is whether the plaintiff's cause of action itself was *based on* [protected activity]," and "the mere fact an action was filed after protected activity took place does not mean it arose from that activity." (*City of Cotati v. Cashman*, *supra*, 29 Cal.4th at pp. 76–78.)

In *Park*, *supra*, 2 Cal.5th 1057, our state Supreme Court discussed the "requisite nexus between the claims an anti-SLAPP motion challenges and protected activity." (*Id.* at p. 1062, italics and some capitalization omitted.) "[A] claim is not subject to a motion to strike simply because it contests an action or decision that was arrived at following speech or petitioning activity, or that was thereafter communicated by means of speech or petitioning activity.  Rather, a claim may be struck only if the speech or petitioning activity *itself* is the wrong complained of, and not just evidence of liability or a step leading to some different act for which liability is asserted." (*Id.* at p. 1060.)  Thus, in evaluating an anti-SLAPP motion, "courts should consider the elements of the challenged claim and what actions by [the] defendant supply those elements and consequently form the basis for liability." (*Id.* at p. 1063; see *Wong v. Wong* (2019) 43 Cal.App.5th 358, 366.)

Accordingly, we turn to consider the elements of the claims alleged here.  "The elements of trespass are:  (1) the plaintiff's ownership or control of the property; (2) the defendant's intentional, reckless, or negligent entry onto the property; (3) lack of permission for the entry or acts in excess of

---

Climate Defense Project, the Mosquito Fleet, Portland Rising Tide, and the Sierra Club.

6

permission; (4) harm; and (5) the defendant's conduct was a substantial factor in causing the harm." (*Ralphs Grocery Co. v. Victory Consultants, Inc.* (2017) 17 Cal.App.5th 245, 262.) The elements of intentional interference with prospective economic advantage are: "(1) the existence, between the plaintiff and some third party, of an economic relationship that contains the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentionally wrongful acts designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm proximately caused by the defendant's action." (*Roy Allan Slurry Seal, Inc. v. American Asphalt South, Inc.* (2017) 2 Cal.5th 505, 512.) In addition, as the trial court indicated, an advocacy organization is liable for acts committed by protesters only if the organization authorized, directed, or ratified specific tortious activity, incited lawless action, or gave specific instructions to carry out violent acts or threats.[5] (See *NAACP v. Claiborne Hardware Co.* (1982) 458 U.S. 886, 931; *Lam v. Ngo* (2001) 91 Cal.App.4th 832, 837.)

The cause of action for trespass was necessarily based on the individual defendants' trespass, and the cause of action for intentional interference was premised on the allegation that the intentional trespass "proximately caused [Golden Gate] to incur economic harm." The third claim was for injunctive relief, and as such it is not a cause of action but instead a request for a remedy not subject to the anti-SLAPP statute. (See *Wong v. Jing* (2010) 189 Cal.App.4th 1354, 1360, fn. 2.) In any event, the request for injunctive relief plainly did not address protected activities, as it sought only to enjoin further "unlawful trespass." In short, the wrong forming the basis of the

---

[5] A representative of Direct Action submitted a declaration in the trial court attesting the organization "did not organize [the] protest or promote it."

claims against Direct Action was its alleged involvement in the trespass, not in speech or petitioning.

We recognize that the complaint's general allegations asserted that Direct Action is an animal-rights activist group with a mission to create " 'a world where all animals are respected and viewed as individuals with autonomy over their own bodies.' " The complaint also asserted that Direct Action maintains a petition on its website called "shut down Golden Gate Fields," which the organization allegedly encourages people to sign. And the complaint asserted that Direct Action has a Facebook page on which it streamed live video footage of the trespass on Golden Gate's horse racing track. But, as the trial court found, Golden Gate's claims did not seek recourse from Direct Action for these activities or circumstances. The wrong complained of was plainly the alleged illegal trespass.[6]

" ' "[I]f the core injury-producing conduct upon which the plaintiff's claim is premised does not rest on protected speech or petitioning activity, collateral or incidental allusions to protected activity will not trigger application of the anti-SLAPP statute." ' " (*Wong v. Wong, supra,* 43 Cal.App.5th at p. 365.) True enough, mixed claims, which are based on allegations of both protected and unprotected activity, are subject to the first step of the anti-SLAPP analysis because a plaintiff cannot shield "particular allegations of protected activity, themselves sufficient to give rise to a claim for relief, from a motion to strike by intermingling them with unprotected acts." (*Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1010; see

---

[6] Other allegations in the complaint also support this conclusion. The complaint identifies certain non-defendants who protested at GGF without trespassing. According to the complaint, these people, also "affiliated with Direct Action[,] stood on a sidewalk just outside GGF, lit purple incendiary devices, and held up a large sign stating 'Shut Down Golden Gate Fields.' " No claims were asserted against these protesters.

8

*Huntingdon Life Sciences, Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.* (2005) 129 Cal.App.4th 1228, 1245.) But the claims here were not mixed, as they all arose out of, and sought relief solely based on, the alleged trespass. Put another way, the complaint's allegations of Direct Action's speech-related activities were essentially extraneous to the claims. (See *Baral v. Schnitt* (2016) 1 Cal.5th 376, 394 [allegations of protected activity that merely provide context, without supporting a claim for recovery, cannot be stricken under the anti-SLAPP statute].)

Direct Action argues that the focus should not be on the trespass, because the complaint's allegations of the organization's liability under various relationship theories were conclusory and cannot overcome the notion that the complaint's claims arose from protected activity. We agree that the allegations of Direct Action's liability were conclusory and the claims against it may be vulnerable to a demurrer or other summary challenge. The complaint alleged that the defendants acted with each other's "permission and consent," but it did not allege any specific factual basis to support the allegations that each defendant was the "agent, co-conspirator, aider and abettor, employee, representative, co-venturer, partner, and/or alter ego" of the others. Still, regardless of the potential vulnerability of the claims against Direct Action, our review here is limited to the trial court's anti-SLAPP ruling, and we cannot conclude that the trial court erred in finding that Direct Action failed to satisfy its burden under the first step of the anti-SLAPP analysis to show that the claims against it arose from protected activity.

*Spencer v. Mowat* (2020) 46 Cal.App.5th 1024 (*Spencer*) is instructive. The plaintiff in that case, like Golden Gate here, sued individual direct tortfeasors as well as an organization and alleged vicarious liability under a

9

conspiracy theory.  (*Id.* at pp. 1027–1028.)  In upholding the denial of the anti-SLAPP motion of two of the individual defendants, the Court of Appeal applied *Park*'s elements-based analysis and explained that the alleged conspiracy was "a doctrine of liability and not a cause of action itself." (*Spencer*, at p. 1036.)  *Spencer* emphasized that the anti-SLAPP analysis focuses on the acts that constitute the underlying torts, not the acts that establish vicarious liability for those torts:  "[I]t is the tort itself that controls, not individual acts that demonstrate the existence of a conspiracy."  (*Id.* at p. 1037.)  According to *Spencer*, this approach "is compelled by *Park* . . . . When liability is asserted for the target act of a conspiracy, the preliminary speech or petitioning activity [evincing participation in the conspiracy] is simply evidence of the defendant's liability, not 'the wrong complained of.' " (*Ibid.*)

  *Simmons v. Bauer Media Group USA, LLC* (2020) 50 Cal.App.5th 1037, is similarly instructive.  In that case, a newspaper was alleged to be vicariously liable under an agency theory for its alleged agent's wrongful act of attaching a tracking device to a car.  (*Id.* at pp. 1045–1046.)  Upholding the denial of the newspaper's anti-SLAPP motion, the Court of Appeal explained that the wrong complained of was the alleged wrongful attachment of the tracking device, not the newspaper's claimed protected activity of " 'newsgathering,' by 'engaging an independent contractor to take news photographs' of a celebrity."  (*Id.* at pp. 1045, 1047.)  Other cases evaluating claims seeking to hold a defendant liable for another's tortious conduct under the first step of the anti-SLAPP analysis have similarly focused on the underlying tort, not the conduct that allegedly established the vicarious liability.  (See, e.g., *Richmond Compassionate Care Collective v. 7 Stars Holistic Foundation, Inc.* (2019) 32 Cal.App.5th 458, 470; *Novartis Vaccines*

*& Diagnostics, Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.* (2006)
143 Cal.App.4th 1284, 1296.)

Pointing mainly to *Contreras v. Dowling* (2016) 5 Cal.App.5th 394,
Direct Action insists there is a "now-shallow split of authority" in the Courts
of Appeal on the application of the anti-SLAPP statute when a defendant is
alleged to be vicariously liable for others' wrongful actions. We are not
convinced. In *Contreras*, a tenant sued a landlord's attorney for conspiring
with the landlord to enter rented premises illegally. (*Id*. at p. 402.) In his
anti-SLAPP motion, the landlord's attorney argued that the only activity of
his the complaint challenged was protected under the anti-SLAPP statute
because it involved providing legal advice and representation. Division Five
of this court agreed with the attorney, concluding that the anti-SLAPP
motion should have been granted. (*Id*. at pp. 399, 409–410.)

Significantly, however, the *Contreras* complaint's allegations and the
parties' contentions made it clear the attorney was sued for "communicative
acts" taken while representing a client. (*Contreras v. Dowling, supra*,
5 Cal.App.5th at p. 409.) Such acts were "per se protected as petitioning
activity by the anti-SLAPP statute." (*Ibid*.; see § 425.16, subd. (e)(1) & (2).)
As *Spencer* explained, "*Contreras* is distinguishable, both because it involved
the factual scenario of an attorney allegedly acting in concert with his clients,
and because the appellate court concluded the plaintiff's allegations of
conspiracy were conclusory and alleged nothing beyond the provision of
routine legal services. [Citation.] Ignoring the defective conspiracy
allegations, the court analyzed separately the respective acts of the landlord
and attorney. It found the only acts alleged against counsel were in advising
his client, protected activity." (*Spencer, supra*, 46 Cal.App.5th at p. 1039.)
Unlike the allegations and parties' contentions in *Contreras*, the allegations

11

and contentions here provide no basis to conclude that Direct Action's actions regarding the trespass were similarly per se protected activity.

Direct Action fears that "if the rule from . . . *Spencer* is right, anyone involved in any protest or social movement can be stripped of the anti-SLAPP statute's protection if the plaintiff alleges any one person associated with the protest or movement committed any illegal action." The concern is exaggerated and inapt. Parties involved in protest and social movements are entitled to the protections of the anti-SLAPP law when they are sued for engaging in protected activities. If they are sued for another's non-protected illegal conduct based on vicarious-liability allegations that are vague, conclusory, or legally insufficient, they can file a demurrer or bring another summary challenge. In such a challenge, the adequacy of the allegations can be reviewed in light of the applicable law, and if appropriate, amendments can be permitted to address pleading deficiencies. (Cf. *Simmons v. Allstate Ins. Co.* (2001) 92 Cal.App.4th 1068, 1073 [plaintiffs are generally precluded from amending a claim after it is stricken under the anti-SLAPP statute].) Although we need not decide whether such a challenge would be meritorious in this case, we can imagine a number of grounds upon which Direct Action could argue that the allegations of its vicarious liability fail to state a claim or must be summarily rejected for legal or factual reasons. Still, the anti-SLAPP law does not immunize advocacy organizations, including Direct Action, from claims based on vicarious liability for another's non-protected conduct simply because of the nature of their organizational missions. Such claims might sometimes be unsupportable, but they might sometimes be legitimate.

Direct Action contends that the other procedural mechanisms to challenge claims brought against an advocacy organization are inadequate

because "[t]he anti-SLAPP statute is designed to provide *additional* protections . . . , including freezing the pleadings, protecting against discovery, providing an early resolution, and awarding mandatory attorney fees."  Amici similarly argue that other mechanisms are less "stringent," are not as "foregrounded at the outset of the litigation," and "contain no fee-shifting provisions," thereby "providing less deterrence against SLAPP claims and less help for defendants fighting them."  But the anti-SLAPP statute was designed to streamline the resolution of claims based on protected activity, not to streamline the resolution of *any* claims that might lack merit.

The trial court properly held that Direct Action failed to make a prima facie showing that the claims against it were premised on protected activity. Because Direct Action failed to sustain its burden at the first step of the anti-SLAPP analysis, we need not address the second step, notwithstanding Direct Action's insistence to the contrary.

### III.
### DISPOSITION

The trial court's order denying Direct Action's anti-SLAPP motion is affirmed.  Respondents are awarded their costs on appeal.

13

 

 

 

_____

Humes, P.J.

We concur:

_____

Margulies, J.

_____

Wiss, J.*

*Judge of the Superior Court of the City and County of San Francisco, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

_Golden Gate Holdings, LLC v. Direct Action Everywhere_  A163315

Trial Court:

Superior Court of the County of Alameda

Trial Judge:

Hon. James R. Reilly

Counsel for Defendant and Appellant:

Matthew Strugar, Law Office of Matthew Strugar

Counsel for amici curiae on behalf of Appellant:

John David Loy, David E. Snyder, Monica N. Price, First Amendment Coalition, for amici curiae First Amendment Coalition, American Civil Liberties Union of Northern California, California News Publishers Association, Californians Aware

Kelsey C. Skaggs, for amici curiae Amazon Watch, the Civil Liberties Defense Center, Climate Defense Project, the Mosquito Fleet, Portland Rising Tide, and the Sierra Club

Counsel for Plaintiffs and Respondents:

Robert R. Moore, Michael J. Betz, Alexander J. Doherty, Allen Matkins Leck Gamble Mallory & Natsis LLP

*Golden Gate Holdings, LLC v. Direct Action Everywhere*  A163315