Filed 2/2/21  Winco Foods v. Thayer CA4/2
*See Concurring Opinion*

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| WINCO FOODS, LLC, | |
| Plaintiff and Respondent, | E072323 |
| v. | (Super.Ct.No. MCC1800860) |
| MARK S. THAYER et al., | OPINION |
| Defendants and Appellants. | |

APPEAL from the Superior Court of Riverside County. Angel M. Bermudez, Judge. Affirmed.

Mark S. Thayer and Jeremy White, in pro. per., and for Defendants and Appellants.

Seyfarth Shaw, Nick Geannacopulos, Kiran A. Seldon, and Jinouth Vasquez Santos for Plaintiff and Respondent.

1

Appellants and defendants Mark Thayer and Jeremy White set up sporadically to register voters and solicit customers for signatures on ballot initiatives in front of respondent and plaintiff WinCo Foods, LLC's grocery store in Temecula. WinCo employees would ask Thayer and White to leave on the grounds they were trespassing and disturbing their customers, but Thayer and White always refused. WinCo filed a lawsuit for civil trespass and intentional interference with business relations and sought declaratory relief and an injunction against trespass.

Thayer and White countered with motions under the statute prohibiting strategic lawsuits against public participation (anti-SLAPP statute), Code of Civil Procedure section 425.16, asserting the lawsuit targeted their exercise of their speech rights under the United States and California Constitutions. The trial court denied their motions without explanation other than to cite *Ralphs Grocery Co. v. Victory Consultants, Inc.* (2017) 17 Cal.App.5th 245 (*Ralphs Grocery*), which held the same kind of activity doesn't constitute protected speech when it occurs on private property in front of a stand-alone retail store if the property isn't set up or used for public gathering.

Thayer and White argue the trial court proceedings were inadequate, their activity was protected speech, and *Ralphs Grocery* was wrongly decided. We conclude the trial court proceedings were adequate, follow California case law establishing solicitors do not have a constitutional right to solicit at the entrance of stores like WinCo's, and therefore affirm.

2

# I

# FACTS

These background facts come from the allegations in WinCo's complaint and declarations offered in connection with Thayer's and White's anti-SLAPP motions.

A. *The WinCo Store*

WinCo operates a grocery store in Temecula, where they sell groceries and small household items to consumers. The WinCo store is located in a stand-alone building, which has its own parking lot and an unshared sidewalk. The store has a single entrance and exit for customers.

WinCo is open to the general public and operates for the purpose of offering its products for sale to consumers. The store doesn't contain a restaurant or meeting rooms. There are no tables or places to congregate and no bulletin boards for public use. The store has never hosted public meetings, events, or gatherings of any kind.

The premises are designed to offer consumers a quick, in-and-out shopping experience. The sidewalk in front of the store entrance is not designed to accommodate gatherings. There are no patios, plazas, parks, or gardens for people to pass the time, nor are there movie theaters, auditoriums, or other similar facilities in the immediate vicinity.

WinCo discourages loitering in or around its store and maintains a no-solicitation policy. Its employees enforce the no-solicitation policy and the store has never voluntarily allowed any sort of solicitation on the premises. WinCo also bars activities on

store premises or in its parking lot not directly related to their retail business operations. They ask anyone who loiters in or around the store to leave.

B. *Thayer's and White's Solicitation*

In 2015, Thayer and White started coming to WinCo's storefront to gather signatures supporting various ballot initiatives and to register voters.

In late summer or early fall of that year, Thayer came to the store and began asking WinCo customers to sign a petition for the legalization of marijuana from a position near the store's front doors. A customer complained and the store manager informed Thayer of WinCo's non-solicitation policy and asked him to leave.

Thayer refused to leave, so the manager contacted the Temecula police department. The authorities declined to remove Thayer, who then continued to solicit signatures from WinCo customers for two weeks. The store manager received customer complaints during that period, including complaints that Thayer was aggressive and used foul language.

On December 18, 2015, White came to the store and began asking WinCo customers to sign a petition to legalize marijuana from a position near the store's front doors. Like Thayer, White refused to leave when asked by the store manager to do so. The manager gave White a letter demanding that he cease and desist from soliciting on WinCo's private property. The manager again called the Temecula police department, but they declined to remove White.

4

Over the next four months, White returned to the property at least 11 times to gather signatures. WinCo employees asked White to leave each time, and each time he refused. According to the store manager, he received customer complaints about White each time, including complaints that White was aggressive, rude, and hostile.

Thayer returned to the store to solicit signatures for a few weeks in the fall of 2016. The store manager again requested that Thayer leave, but he refused. The manager said he received daily customer complaints about Thayer during this period.

On April 1, Thayer returned to the store and on April 23, 2018, both men returned to the store, placed tables in front of the entrance, and began soliciting customers for signatures related to a tax measure. During this time, customers complained to the manager that they didn't want to shop at the store because of the solicitation and because the men responded aggressively when customers expressed differing viewpoints.

The manager again called the police and this time the responding officer asked White and Thayer to leave because they were soliciting on private property. They refused to leave unless WinCo performed a citizen's arrest. According to the store manager, WinCo did so, though he provides no details about that incident. He reports Thayer and White nevertheless still seek to solicit on WinCo's property.

C. *WinCo's Complaint*

WinCo filed suit against Thayer and White, alleging they "have entered and occupied . . . the Store premises without permission to do so, have refused to leave when asked by Store personnel, and threaten to return whenever it so pleases them." WinCo

5

alleged their conduct constitutes trespass and sought a court order prohibiting them from entering due to their "continuing disregard of [WinCo's] rights."

WinCo also alleged Thayer and White had harmed the store's "business and goodwill by intentionally interfering with WinCo's business relations with its customers and its employees as well as damaging WinCo's reputation." WinCo alleged they "knowingly and intentionally interfere[d] with" these relationships.

WinCo asserted claims for civil trespass and intentional interference with business relations and sought declaratory and injunctive relief to exclude Thayer and White from its premises for any purpose other than grocery shopping.

D. *Thayer's and White's Anti-SLAPP Motions*

Thayer and White filed motions to strike under the state anti-SLAPP statute, Code of Civil Procedure section 425.16. Both men submitted declarations to support their motions. The substance of both declarations agreed in broad outline with the declaration of WinCo's store manager. They admitted they had been collecting and gathering signatures outside the entrance to the WinCo store and said they had told WinCo employees repeatedly their conduct didn't constitute trespass and had therefore refused to leave.

We set out White's full statement here. "I have been collecting and gathering signatures for ballot issues and registering voters at WINCO FOODS STORE located at 40435 Winchester Road, Temecula, CA 92591 since 2015 and have registered over 300 voters at that specific location per season. I further have collected many tens of thousands

of signatures for ballot issues at that location. The voter registrations and signatures gathered are independent to what was done at that location by other signature gatherers. Every time I arrive at WINCO FOODS and begin registering voters and collecting signatures outside the entrance to the store, WINCO FOODS employees would approach and begin harassing me in front of their customers, yelling at me that their Company Corporate Policy prohibited me from registering voters and gathering signatures for ballot issues in front of their store and to get out. They repeatedly threatened to call the Police if I did not stop what I was doing and leave from in front of their store. I would inform them to provide them notice, both orally and in writing, I was engaged in constitutional activity and not committing any trespasses and would not leave. They in turn would call the Police, who would arrive and investigate the matter. Upon sharing with the Police California Penal Code 602.1(d)2, the Officers would explain to the WINCO FOODS store employees that I was allowed to be there engaging in the Constitutional activity and conduct I was engaged in. I would continue to register voters and gather signatures. WINCO FOODS employees however ignored what they were told by the Officers and would repeatedly call the Police over and over again and cause them to return to the store only to re-told again that what I was engaging in was constitutional activity and because I was not subject to the trespass statute they could not remove me. During the course of registering voters and collecting signatures last April 2018, WINCO FOODS employees advised me they had wanted to sue me for years and were going to sue me to get an injunction against me to enforce their Idaho Company Policy and keep

7

me from registering voters and gathering signatures at their store located there at 40435 Winchester Road, Temecula, CA 92591 and other store locations throughout California." Thayer's declaration is substantially the same.

In their briefs, Thayer and White defended their actions based on their assertion that gathering signatures on WinCo's property is protected speech. They cited Penal Code section 602.1, subdivision (d) as establishing that collecting signatures for ballot initiatives is not criminal trespass and pointed to an opinion from the City of Riverside that collection of signatures on private property cannot be enjoined even when a business files a complaint with state and local authorities. They argued these sources "indicate that there is a strong argument that the collection of signatures on private property is constitutionally protected activity" and the *Ralphs Grocery* decision was wrongly decided. They urged the trial court to construe free speech rights and the anti-SLAPP statute broadly to protect their activities.

WinCo opposed the motions on the grounds the solicitation was not protected activity because the store is a "stand-alone retail establishment that does not have a place for customers to congregate" and is "very different from a large shopping center" that could be considered a quasi-public forum under *Robins v. Pruneyard Shopping Center* (1979) 23 Cal.3d 899 (*Pruneyard*). They relied explicitly on the *Ralphs Grocery* court's reasoning that "because the activity was occurring on private property, and thus, not protected under the First and Fourteenth Amendments of the United States Constitution

or under California law, the petitioners had not met their burden of showing that the complaint arose from protected activity."

WinCo also argued they had demonstrated that, even if Thayer and White could show their actions were protected, WinCo's uncontested evidence showed they had a probability of succeeding on the merits of their claims.

E. *The Trial Court Order Denying the Anti-SLAPP Motions*

On January 30, 2019, the trial court issued a tentative ruling saying it would deny the motions under the rationale of *Ralphs Grocery*. The announcement of the tentative ruling advised the parties they must notify the court if they desired oral argument, otherwise "the tentative ruling will become the final ruling on the matter effective the date of the hearing."

Thayer and White didn't request oral argument as required. However, the trial court permitted Thayer to argue the motion at the case management hearing held the next day. Thayer reiterated the arguments in his brief and argued the *Ralphs Grocery* decision was wrongly decided.

Thayer and White also attempted to present new evidence, which consisted of unsigned copies of ballot initiatives for which they had solicited signatures and a voter registration form. The trial court allowed them to file the documents but declined to consider them as not timely. The ballot initiatives are part of the record on appeal, attached to Thayer's and White's motion for judicial notice filed in the trial court, though the voter registration form is not.

After hearing Thayer's argument, the trial judge announced—without further explanation—that it would not change its tentative ruling and denied the motions to strike. The trial judge then proceeded with the case management hearing, determined Thayer and White declined court-sponsored mediation, ordered a mandatory settlement conference, and set a trial status conference.

Thayer and White timely appealed the orders denying their motions to strike.

## II

## ANALYSIS

A. *The Trial Court Proceedings*

Thayer and White argue the trial court "failed to give [them] any meaningful opportunity to be heard" at the case management hearing and complain they "were deprived of their opportunity to present evidence, facts and argument" supporting their anti-SLAPP motions.

Thayer and White represent the trial judge didn't allow them to present oral argument. They say when Thayer attempted to present his arguments, he "was notified by the court the matter was over. [Thayer] never got to present his case, his evidence, his argument. No meaningful hearing was conducted. As a result, none of that is available for review on appeal other than the trial court's denial of appellant's Special Motion to Strike and what limited record the court made." They argue the trial judge "abused its discretion by dismissing the case pursuant to *Ralphs Supermarkets v. Victory Consultants,* 21

Cal.App.5th (2017) without giving [them] an opportunity to present their case and evidence showing why [their] conduct was different than that discussed in [that case]."

We review evidentiary rulings refusing to admit evidence in connection with anti-SLAPP motions for abuse of discretion. (*Contemporary Services Corp. v. Staff Pro Inc.* (2007) 152 Cal.App.4th 1043, 1061.) We see no abuse of discretion here. First, we reject the contention that Thayer and White had no meaningful chance to present their arguments. They presented their motions to strike in written form to the court and supported them with declarations setting out the facts. They also submitted memoranda of law which effectively, if not successfully, argued the relevant legal points, including by identifying the *Ralphs Grocery* decision and arguing that it was wrongly decided. Though they failed to notify the court that they intended to argue the motion at the January 31 hearing, the trial judge nevertheless allowed Thayer to argue, and Thayer again made the relevant legal points. The trial judge remained unconvinced and ruled against the defendants. Nevertheless, Thayer and White had every opportunity to advocate for their position, and Thayer did an admirable job doing so for a litigant untrained in the law.

We also find no error in the trial court's decision not to consider the additional evidence Thayer and White sought to present at the hearing. Trial courts have particularly broad discretion in ruling on the admission of evidence. If Thayer and White thought the evidence was critical to their motion, they should have submitted it with their

11

declarations, not brought it forward after the trial court had considered the parties' submissions and issued a tentative ruling.

In any event, Thayer and White submitted the new evidence to the court attached to motions for judicial notice, which are part of the record on appeal. These documents show the trial judge didn't abuse its discretion in declining to consider them and also that any error was harmless. The documents consisted of unsigned ballot initiatives for which Thayer and White had solicited signatures. Their briefs in the trial court said they also submitted a voter registration form, though that form is not in the record on appeal. Such evidence was, at best, duplicative. The parties agreed on the nature of Thayer's and White's conduct, so the forms were unnecessary to decide whether to grant the motion to strike. The question was whether their conduct was protected under current law.

We therefore decline to reverse the order denying the motions to strike based on the alleged deficiencies with the process in the trial court.

B. *Denial of the Anti-SLAPP Motions*

Thayer and White argue the trial judge erred by denying their motions to strike WinCo's allegations because soliciting citizens to support ballot initiatives and registering voters is protected political speech which WinCo targeted to silence them.

A strategic lawsuit against public participation (SLAPP suit) is "a meritless lawsuit 'filed primarily to chill the defendant's exercise of First Amendment rights.'" (*Paul v. Friedman* (2002) 95 Cal.App.4th 853, 861, quoting *Wilcox v. Superior Court* (1994) 27 Cal.App.4th 809, 815, fn. 2.) The California Legislature passed the anti-

SLAPP statute, Code of Civil Procedure section 425.16, to cut SLAPP suits short, allowing a defendant to move to dismiss "certain unmeritorious claims that are brought to thwart constitutionally protected speech or petitioning activity." (*Robinzine v. Vicory* (2006) 143 Cal.App.4th 1416, 1420-1421.)

The anti-SLAPP statute provides, "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (Code Civ. Proc, § 425.16, subd. (b)(1), unlabeled statutory citations refer to this code.)

Faced with a special motion to strike, a trial court must conduct a two-step analysis. "At the first step, the moving defendant bears the burden of identifying all allegations of protected activity, and the claims for relief supported by them. When relief is sought based on allegations of both protected and unprotected activity, the unprotected activity is disregarded at this stage. If the court determines that relief is sought based on allegations arising from activity protected by the statute, the second step is reached. There, the burden shifts to the plaintiff to demonstrate that each challenged claim based on protected activity is legally sufficient and factually substantiated. The court, without resolving evidentiary conflicts, must determine whether the plaintiff's showing, if accepted by the trier of fact, would be sufficient to sustain a favorable judgment. If not,

13

the claim is stricken. Allegations of protected activity supporting the stricken claim are eliminated from the complaint, unless they also support a distinct claim on which the plaintiff has shown a probability of prevailing." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 396.)

"To make a showing under the first prong, the defendant need not show that the actions it is alleged to have taken were protected as a matter of law, but need only establish a prima facie case that its alleged actions fell into one of the categories listed in section 425.16, subdivision (e)." (*Medical Marijuana, Inc. v. ProjectCBD.com* (2016) 6 Cal.App.5th 602, 614-615 (*Medical Marijuana*).) Section 425.16, subdivision (e) protects "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."

"'[T]he statutory phrase "cause of action . . . arising from" means simply that the defendant's act underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech.' [Citations.] A cause of action may be triggered by a protected act but not arise from that act. [Citation.] Thus, the 'anti-SLAPP

14

statute's definitional focus is not the form of the plaintiff's cause of action but, rather, the defendant's *activity* that gives rise to his or her asserted liability—and whether that activity constitutes protected speech or petitioning.'" (*Medical Marijuana*, *supra*, 6 Cal.App.5th at pp. 614-615.)

If the court finds the lawsuit didn't arise from protected speech or petitioning, the anti-SLAPP motion fails. If the court finds the defendant has made the required showing, the burden shifts to the plaintiff to demonstrate "there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1); see *Medical Marijuana*, *supra*, 6 Cal.App.5th at p. 615.) "Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to be stricken under the statute." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89.)

We review de novo the trial court's order denying a motion to strike under section 425.16. (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 325.) We consider the pleadings and supporting and opposing affidavits, and "accept as true the evidence favorable to the plaintiff [citation] and evaluate the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law." (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3.)

Thayer and White argue WinCo's complaint is aimed at protected activity, namely their solicitation of signatures to support ballot initiatives and referendums. WinCo contends the allegations in the complaint don't target protected activity because the

15

solicitation occurred on private property which isn't held open for public gatherings and therefore isn't protected under the First and Fourteenth Amendments of the United States Constitution or under the California Constitution. (See *Lloyd Corp. v. Tanner* (1972) 407 U.S. 551, 567; *Ralphs Grocery Co. v. United Food & Commercial Workers Union Local 8* (2012) 55 Cal.4th 1083, 1104.)

In deciding whether an anti-SLAPP motion should be granted, "we must determine if the defendant has established a prima facie case that their alleged actions fell into one of the categories listed in section 425.16, subdivision (e). [Citation.] Where the complaint includes allegations that the challenged conduct occurred on private property, which would render the conduct unprotected for anti-SLAPP purposes, we must consider those allegations as part of our first prong analysis. If we do not, we cannot determine whether that the cause of action arises out of protected activity." (*Ralphs Grocery*, *supra*, 17 Cal.App.5th at p. 258.) Here, WinCo have alleged Thayer's and White's solicitation occurred in front of their Temecula store, that the store is private property, and the solicitation is therefore not protected activity. Thayer and White have to show WinCo are incorrect and the complaint is directed at protected activity.[1]

---

[1] Thayer and White suggest WinCo is arguing the law of its home state, Idaho, should control. We don't understand their argument in that way. In any event, we agree with Thayer and White that the "major question to be answered [is] whether the activity of the Appellants, the registration of voters and collection of signatures for state ballot initiatives, is constitutionally protected activity based on recent interpretations of California state law."

16

"Generally, landowners and tenants have a right to exclude persons from trespassing on private property; the right to exclude persons is a fundamental aspect of private property ownership. [Citation.] 'The right to exclude persons exercising First Amendment rights, however, is not absolute. Our Supreme Court held in [*Pruneyard*,] *supra*, 23 Cal.3d 899, that when private property is generally open to the public and functions as the equivalent of a traditional public forum, then the California Constitution protect[s] speech, reasonably exercised, on the property, even though the property was privately owned.'" (*Ralphs Grocery*, *supra*, 17 Cal.App.5th at p. 258.)

However, the California Supreme Court has recognized *Pruneyard* is limited to common areas set aside for gatherings, rather than areas reserved simply for entering and exiting a store. The Court explained such common gathering spots "generally have seating and other amenities producing a congenial environment that encourages passing shoppers to stop and linger and to leisurely congregate for purposes of relaxation and conversation. By contrast, areas immediately adjacent to the entrances of individual stores typically lack seating and are not designed to promote relaxation and socializing. Instead, those areas serve utilitarian purposes of facilitating customers' entrance to and exit from the stores and also, from the stores' perspective, advertising the goods and services available within. Soliciting signatures on initiative petitions, distributing handbills, and similar expressive activities pose a significantly greater risk of interfering with normal business operations when those activities are conducted in close proximity to the entrances and exits of individual stores rather than in the less heavily trafficked and

17

more congenial common areas." (*Ralphs Grocery Co. v. United Food & Commercial Workers Union Local 8*, *supra*, 55 Cal.4th at p. 1092.)

As a result, our Supreme Court concluded, "within a shopping center or mall, the areas outside individual stores' customer entrances and exits, at least as typically configured and furnished, *are not public forums* under this court's decision in *Pruneyard*." (*Ralphs Grocery Co. v. United Food & Commercial Workers Union Local 8*, *supra*, 55 Cal.4th at p. 1092, first italics added.) "[T]o be a public forum under our state Constitution's liberty of speech provision, an area within a shopping center must be designed and furnished in a way that induces shoppers to congregate for purposes of entertainment, relaxation, or conversation, and not merely to walk to or from a parking area, or to walk from one store to another, or to view a store's merchandise and advertising displays." (*Id.* at p. 1093.)

Thayer and White point to no allegations that support treating the front of the WinCo store as a public forum for purposes of our analysis. They therefore failed to carry their burden of establishing their petitioning activity engaged in at the front of the WinCo store was protected. WinCo, by contrast, provided undisputed evidence, in the form of their store manager's declaration, that the store is a retail shop with the sole purpose of selling food products to customers. He said the store is located in a stand-alone building with its own parking lot and an unshared sidewalk and has a single entrance and exit for customers. He also said they don't have a restaurant or meeting rooms, there are no tables or places to congregate, there are no bulletin boards for public use, and they have never

18

hosted public meetings, events, or gatherings of any kind. Nor is the sidewalk in front of the store entrance designed to accommodate gatherings. It has no patios, plazas, parks, or gardens, and there aren't any movie theaters, auditoriums, or other similar facilities in the immediate vicinity.

In these respects, the store is just like the store in *Ralphs Grocery*, where the Court of Appeal found similar petitioning activity was not protected under *Pruneyard*. (*Ralphs Grocery*, *supra*, 17 Cal.App.5th at p. 261.) We see no basis for departing from that decision. As in that case, WinCo "open their . . . stores to the public so the public can buy goods. They do not offer their property for any other use. Thus, in contrast to the multipurpose shopping centers like the one discussed in *Pruneyard*, *supra*, 23 Cal.3d 899, the [store] do[es] not have a public character that would support a finding that Respondents were engaging in protected activity for purposes of their anti-SLAPP motion." (*Id.* at pp. 260-261.)

Thayer and White argue that we should nevertheless find their activity protected because it is excluded from the definition of criminal trespass under the Penal Code. They point to Penal Code section 601.2, which defines misdemeanor criminal trespass but expressly excludes conduct by a person "who is engaging in activities protected by the California Constitution or the United States Constitution." (Pen. Code, § 601.2, subd. (d).) They also point out that "the City of Riverside has issued an opinion that the collection of signatures on private property is not criminal activity and cannot be enjoined even when a business files a complaint with state and local authorities." The

19

problem with this argument is these sources concern the reach of the Penal Code. Penal Code section 601.2 defines *criminal* trespass and imposes punishment for qualifying conduct. WinCo has brought a suit for *civil* trespass, which is a broader category of conduct and allows property owners to protect their private property interests and recover damages for any injuries suffered but doesn't impose criminal sanctions. We see no basis in these sources to depart from the settled California case law holding solicitation that occurs on private property which is not held open to the public for gathering is not protected activity under the anti-SLAPP statute.[2]

## III

## DISPOSITION

We affirm the order denying Thayer's and White's special motions to strike. The parties shall bear their own costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

SLOUGH_____

Acting P. J.

We concur:

FIELDS_____

J.

MENETREZ_____

J.

---

[2] We decline to address whether solicitation that occurs on private property that is not a public forum is protected activity under the Penal Code.

20

[*WinCo Foods, LLC v. Thayer et al.*, E072323]

Slough, J., Concurring.

I would go further than my colleagues and, as the parties request, address whether WinCo's claims against Thayer and White have minimal merit. An anti-SLAPP motion fails if the cause of action doesn't arise from protected activity, but it also fails if the plaintiff demonstrates the claim has at least minimal merit. (Code Civ. Proc., § 425.16, subd. (b)(1); *Navellier v. Sletten* (2002) 29 Cal.4th 82, 89.) WinCo has demonstrated their trespass claim has minimal merit but in my view hasn't done so for their intentional interference with business relations claim.

Under Code of Civil Procedure section 425.16, subdivision (b)(2), the trial court makes this determination by looking to "the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." (*Navellier v. Sletten*, *supra*, 29 Cal.4th at p. 89.) We don't "weigh credibility or compare the weight of the evidence . . . [but] accept as true the evidence favorable to the plaintiff." (*HMS Capital, Inc. v. Lawyers Title Co.* (2004) 118 Cal.App.4th 204, 212.) WinCo need only establish their claims have minimal merit to avoid being stricken as a SLAPP suit. (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 291.) "In this sense, the anti-SLAPP statute operates like a 'motion for summary judgment in "reverse."'" (*Ralphs Grocery* (2017) 17 Cal.App.5th 245, 261.)

1

WinCo's allegations and the declaration of their store manager satisfy their minimal burden of establishing a probability of prevailing on their claim that Thayer and White were trespassing while collecting signatures at the store, which requires proof of "(1) the plaintiff's ownership or control of the property; (2) the defendant's intentional, reckless, or negligent entry onto the property; (3) lack of permission for the entry or acts in excess of permission; (4) harm; and (5) the defendant's conduct was a substantial factor in causing the harm." (*Ralphs Grocery*, *supra*, 17 Cal.App.5th at p. 262.) Their store manager said WinCo owns the property and Thayer and White intentionally entered their property without permission. The store manager also said Thayer's and White's conduct while soliciting their customers was aggressive, hostile, and elicited customer complaints. Thayer and White don't contest any of these facts, and we are required to credit them. Thus, WinCo have met their burden of showing their trespass claim has the minimal merit required to go forward despite defendants' anti-SLAPP motion.

The same is not true of WinCo's intentional interference with business relationships claim, which requires proof of "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." (*Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, 1153.)

WinCo ask us to uphold their claim for intentional interference against the anti-SLAPP motions on the ground they have established a minimal likelihood of success. I don't think they've carried their burden on this claim because they haven't alleged or presented evidence that Thayer's and White's soliciting activities were "designed to disrupt" WinCo's relationship with their customers. To establish a defendant's actions were designed to disrupt a business relationship, a plaintiff must establish the defendant desired the interference or knew it was "certain or substantially certain to occur as a result of his action." (*Korea Supply Co. v. Lockheed Martin Corp., supra*, 29 Cal.4th at p. 1157, quoting Rest.2d Torts, § 766B, com. d, p. 22.) Here, though WinCo's manager says there were customers who said they didn't want to shop at the store when the men were soliciting in front of it, he didn't provide evidence any customer followed through on such a threat, that Thayer and White wanted to drive customers away, or even that he put them on notice by telling them he was receiving such complaints.

If anything, it may be argued the allegations and evidence show Thayer and White *should have known* their aggressive and rude behavior would drive some of WinCo's customers to do their shopping elsewhere. I don't think WinCo's allegations or their manager's declaration support that inference. For Thayer and White to understand their conduct was *certain or substantially certain* to keep customers away, it would have to be foreseeable and reasonable for a customer to carry out a threat to shop elsewhere. But Thayer and White were present at the store only sporadically. According to WinCo, Thayer came to their store for about two weeks in 2015, for a few weeks in 2016, not at

3

all in 2017, and for two days in April 2018. White was there for about 11 days between December 2015 and April 2016 and again for one day on April 23, 2018. That works out to about 13 days for White and 25 days for Thayer over a period of two and a half years. While we are required to credit WinCo's assertion that customers complained about their conduct when they were present and some said they didn't want to shop at the store while Thayer and White were soliciting, I don't think it's reasonable to charge them with knowing anyone would would shop at another store when the chance of any one customer coming upon them on any given day was so very low. This is not to say that sustained solicitation in front of the same store could not support an intentional interference with business relationships claim, especially if the store owner presented evidence that customers did shop elsewhere to avoid them. However, I don't believe WinCo's allegations and evidence support the claim.

This case hasn't reached the stage where WinCo's claims can be dismissed for lack of evidentiary support, however. Their claim survives the special motion to strike because soliciting signatures on private property is not protected activity. However, in my view, to prevail against either defendant, they will have to present stronger evidence that either Thayer or White were certain or substantially certain WinCo would lose customers as a result of their conduct.

SLOUGH
Acting P. J.

4